## PROVIDENCE COUNTY.

———◆———

WILLIAM H. JOYCE *vs.* SYLVESTER G. MARTIN and HARLAN P. BLISS.

A., owning a defective wharf used in connection with a place of public resort, and knowing the defect, leased place and wharf to B., who learned of the wharf defect after accepting the lease, but continued to use wharf and place for public resort. In an action for damages to C. who was injured by the wharf defect : —

*Held*, that the action was maintainable against A. and B. jointly.

TRESPASS ON THE CASE. On demurrer to the second count of the declaration.

*July* 16, 1887. DURFEE, C. J. We think the second count of the plaintiff's declaration sets forth a good cause of action, and that the demurrer to it must be overruled. Briefly stated, the case set forth is this. On February 15, 1881, the defendant Martin was, and for a long time had been, the owner of an estate in East Providence, bounding on Providence River, known as "Silver Spring," being a place of public resort and entertainment to which the public had long been in the habit of resorting, and of a wharf extending therefrom into said river, over which the people were in the habit of coming and going in great numbers to and

from said " Silver Spring," and at which many steamboats were accustomed to touch. This wharf was, at the time mentioned, and long had been, unfit for such use in this, that there was a large opening in the top of it which was accustomed to close when the steamboats touched, to the great danger of persons standing there, the wharf being without proper protection against the resulting shock. On February 15, 1881, Martin, knowing this, leased said " Silver Spring " and wharf to the defendant Bliss, who who was then ignorant of it, for the term of eight years, at $1,500 *per annum*, "Silver Spring " being let to be used as a place of public entertainment and resort, and said wharf as a suitable landing-place and place of egress for the numerous visitors thereto. Bliss soon became acquainted with the condition of the wharf, but left it unrepaired until after July 31, 1886, while he continued to invite the public to his resort, both he and Martin meanwhile deriving great gains and profits therefrom. On July 31, 1886, the plaintiff's son, Henry D. Joyce, a boy of eleven years, was on the wharf as a visitor, at the invitation of Bliss, and, while in the exercise of due care, got his foot caught in the opening and crushed by the closing thereof when a steamboat touched the wharf. The plaintiff sues for damages for loss of the boy's services, etc.

In *Owings* v. *Jones*, 9 Md. 108, the plaintiff sued for damages for injuries received by falling into a vault appurtenant to the property of the defendant, and built under the sidewalk of a public street. It was shown in defence that the property had been leased by the defendant for the term of seven years, the lessee agreeing to pay an annual rent therefor, but not in any manner stipulating to keep the demised premises in repair, nor to have the sink kept clean, and that the lessee was in possession at the time of the accident. But the court held that the defendant was not relieved from liability if the vault was so constructed as to be unsafe for passers-by when the premises were let, or as to be liable to become unsafe in the necessary opening for the purpose of cleaning it. The court, in giving its opinion, laid down the two following doctrines, relying on the authority of *Rich* v. *Basterfield*, 4 C. B. 784, and the cases cited there, to wit: *First*. Where property is demised and at the time of the demise is not a nuisance, and becomes so only by act of the tenant while in his possession, and injury hap-

pens during such possession, the owner is not liable. *Second.* But where the owner leases premises which are a nuisance, or must in the nature of things become so by their use, and receives rent, then, whether in or out of possession, he is liable for injuries resulting from such nuisance. Numerous cases support this view. *Rosewell* v. *Prior,* 1 Salk. 460; also, 12 Mod. 635, 639; *The King* v. *Pedly,* 1 A. & E. 822; *The King* v. *Moore,* 3 B. & Ad. 184; *Todd* v. *Flight,* 9 C. B. N. S. 377; *Nelson* v. *The Liverpool Brewery Co.* L. R. 2 C. P. Div. 311; *Pretty* v. *Bickmore,* L. R. 8 C. P. 401. In the last named case the lessor was held to be exempt from liability because he let the premises by lease in which the tenant covenanted to keep them in repair. See, also, the following American cases: *Staple* v. *Spring,* 10 Mass. 72; *Fish* v. *Dodge,* 4 Denio, 311; *Davenport* v. *Ruckman,* 37 N. Y. 568; *Anderson* v. *Dickie,* 26 How. Pr. 105; *House* v. *Metcalf,* 27 Conn. 631.

In *Godley* v. *Haggerty,* 20 Pa. St. 387, affirmed in *Carson* v. *Godly,* 26 Pa. St. 111, it was held that when the owner of real estate erected thereon a row of buildings with the intention of renting them to the government as bonded warehouses, and with the knowledge that they would be obliged as such to sustain very great weights, he was liable in damages for an injury to a person employed in one of the stores occasioned by its fall, after having been so rented, though the immediate cause of the accident was the storage of heavy merchandise in an upper story, it appearing that the building had been constructed on a defective plan and of insufficient strength.

In *Swords* v. *Edgar,* 59 N. Y. 28, it was held that the lessors of a pier, which was in possession of their lessee from whom they were receiving rent for it, were liable for an injury received by a longshoreman engaged in discharging a cargo thereon; the cause of the injury being a danger or defect which existed at the date of the demise. The pier, though private property, was kept for use by all vessels which might come to it for the purpose of loading and unloading, and the court held that the longshoreman, being in the employ of such a vessel, was to be regarded as there by invitation, and therefore as entitled to the protection which would result from having the pier in an ordinary state of security and

strength. The court also held, that though the lease contained a covenant binding the lessee to keep the pier in good order and repair, the lessors were not exonerated thereby, dissenting from *Pretty* v. *Bickmore, supra.*

In *Edwards* v. *New York & Harlem R. R. Co.* 98 N. Y. 245, the plaintiff was injured by the falling of a gallery in a building let to be used for public exhibitions ; and it was held that the lessors were not liable, there being no evidence that they either knew or had reason to know that the gallery would be used in such a way as to endanger its security. The court, however, in delivering judgment said : " If one builds a house for public amusements or entertainments, and lets it for those purposes, knowing that it is so imperfectly or carelessly built that it is liable to go to pieces in the ordinary use for which it was designed, he is liable to the persons injured through his carelessness." A vigorous dissenting opinion, arguing that the lessors ought to be held to respond in damages, was drawn up by Ruger, C. J., and concurred in by Danforth and Finch, JJ. See, also, *Camp* v. *Wood,* 76 N. Y. 92.

The case of *Albert* v. *State to use of Ryan,* Court of Appeals, Maryland, January 4, 1887, 6 Central Reporter, 447, issue of April 7, 1887, appears to have been almost identical in its circumstances with the case at bar. It was an action brought by or for a minor for damages sustained by him by the death of his parents, who were drowned by reason of the defectiveness of a wharf in the occupation of the defendant's tenant. The instruction given on trial to the jury was, that " if the jury found that the defendant was the owner of the wharf and that he rented it out to a tenant, and that at the time of the renting the wharf was unsafe, and the defendant knew, or by the exercise of reasonable diligence could have known, of its unsafe condition, and the accident happened in consequence of such condition, then the plaintiff was entitled to recover." On appeal this instruction was approved by the Court of Appeals as correct.

Several of the cases above cited are cases in which the lessors were held to respond in damages because the premises from which the injuries were received were in such a state as to be nuisances, public or private, when let ; but others are cases in which the lessors were held to respond because the premises let by them for a

rent or profit were let to be used for purposes for which they were not fit or safe to be used, and because the lessors knew when they let them the purposes for which they were to be used, and also knew, or ought to have known, that they were not fit or safe to be so used. The latter class includes *Godley* v. *Haggerty ; Swords* v. *Edgar ; Albert* v. *State to use of Ryan ;* the liability which it proclaims being of special application where the premises are let to be used for popular resort 'or entertainment, or for other public or *quasi* public purposes. And, indeed, a disposition appears to exist on the part of some judges to limit the lessor's liability, except for nuisances, to cases in which the injuries complained of are attributable to defective or dangerous premises let to be so used. The case at bar plainly falls within this class even when so limited.

The defendants cite *Leonard* v. *Storer*, 115 Mass. 86. In that case the plaintiff was injured, while passing along a public street in Boston, by the falling of snow and ice upon her from a house belonging to the defendant, but leased by him nearly twelve years before for the term of fifteen years to a tenant who, by the terms of the lease, was " to make all needful and proper repairs, both external and internal." The plaintiff sought to charge the defendant because the roof was so constructed that the snow and ice in collecting upon it would naturally slide into the street. The court held that it did not appear that the tenant " might not have cleaned the roof by the exercise of due care, or that he could not by proper precautions have prevented the accident," nor that " any neglect of duty or wrongful act on the part of the defendant was the cause of the injury," and affirmed the judgment for the defendant. The ground of decision is not very clearly set forth, but it would seem that the defendant was discharged because the injury was attributable to the negligence of the tenant instead of to any defect in the structure of the house, or, if there was any defect, because it was for the tenant alone under the lease to remedy it. It will be observed that the defendant, if charged, would have been charged on the ground that the house when let was a public nuisance, and the case would have belonged to the first class of cases as above.

The defendants also cite *Mellen* v. *Morrill*, 126 Mass. 545. In

that case the defendant was the owner of a dwelling-house which he let by parol to a tenant who occupied it for a dwelling-house and market. The walk from the street to the door led along an embankment, and was unsafe for want of a railing. The plaintiff, in going to the house along the walk in the night-time for the purpose of settling an account with the tenant, fell down the embankment and was injured. The court held that the defendant was not liable, but that it was the duty of the tenant, if he used the premises so as impliedly to invite people to visit them in the night, " to make them safe by a railing, or by a light, or by other warning." It did not appear that the defendant let the premises to be used as a market. Moreover, it would seem that they might have been safely used if the tenant had simply set out a light or other warning. See *Rich* v. *Basterfield*, 4 C. B. 784.

We think the action is maintainable against the lessor and lessee jointly. The case of *Irvine* v. *Wood et al.* 51 N. Y. 224, is exactly in point. There the cause of the injury was a coal-hole excavated in a city sidewalk and defectively covered, which was used by lessees of the premises. The lessor did not contest his liability. The court held that the lessees were liable jointly with him. The court, in giving judgment, said : " The landlord rented the nuisance and took rent for it. The tenants used it and paid rent, and hence they must all be considered as continuing and responsible for the nuisance." Citing *The King* v. *Pedly*, 1 A. & E. 822 ; *Anderson* v. *Dickie*, 26 How. Pr. 105 ; *The People* v. *Erwin*, 4 Denio, 129. See, also, *The King* v. *Moore*, 3 B. & Ad. 184. *Demurrer overruled.*

*Augustus S. Miller & Arthur L. Brown*, for plaintiff.
*Nicholas Van Slyck & Cyrus M. Van Slyck*, for defendants.