THE BRUNSWICK-BALKE-COLLENDER COMPANY, Appellant, vs. REES and another, imp., Respondents.

SAME, Respondent, vs. LINDEMANN, and others, imp., Appellants.

*September 24 — October 11, 1887.*

LANDLORD AND TENANT: *Liability of landlord for defects in premises, and of tenant for negligent use:* NEGLIGENCE: PLEADING.

1. A landlord, who leases the upper stories of his building for a business involving the storage of articles of great weight, representing the floors to be sufficiently strong for that use, but knowing that they are not, is liable, under the general rules of law, for injuries to tenants to whom he subsequently lets the lower stories, for injuries received by them in consequence of the overloading of such upper floors by the tenant thereof in reliance upon his representations; whether or not there is an implied agreement in his lease of the lower floors, that he has not authorized the tenant of the upper floors to use them in such a way as to endanger persons or property below.

AUGUST TERM, 1887. 443

The Brunswick-Balke-Collender Co. vs. Rees and another, imp.

2. The tenant below may recover from the tenant above for an injury caused by his negligence in overloading the floors, notwithstanding he has also a remedy against the landlord therefor.

3. A complaint against the owner of a building and his tenants of the upper stories, which alleges in substance that the owner, in leasing such upper stories, represented to the tenants that the floors were sufficiently strong to safely sustain a great weight of the heavy goods which they proposed to store therein, well knowing at the time that they were not of sufficient strength for that purpose, and that such tenants, relying upon these representations, carelessly and negligently overloaded those floors, by reason of which and of the fault and negligence of those tenants, the upper floors broke and fell with the goods stored thereon, into and through the lower floors occupied by the plaintiff, and injured and destroyed his goods and otherwise injured and damaged him, *held* to state a good cause of action against both landlord and tenants, and sufficiently charge negligence against the latter.

APPEALS from the County Court of *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as part of the opinion:

The facts in this case as set up in the complaint are substantially as follows:

(1) That on and before November 17, 1884, the defendants *Frank Rees* and *John K. Rees* were the owners of a brick block, known as "Rees' block," situated on West Water street, in the city of Milwaukee; that said block is four stories high above the basement, and is divided into several stores by partition walls, and all leased by said respondents *Rees* to different tenants; that the north store of said block is known as "No. 146 West Water Street," and the store in said block next adjoining is known as "No. 144 West Water Street."

(2) That on or about the 17th day of November, 1884, the defendants *Rees* and the defendants *Lindemann* entered into negotiations for leasing to the *Lindemanns* the store known as "No. 146 West Water Street," together with the fourth floor of said store No. 144 West Water street; that

at the time of such negotiations the *Lindemanns* stated to said defendants *Rees* that they desired to lease the fourth floor of the store No. 144 "as a shop and warerooms for the manufacture, storing, and selling of stoves, wire, iron, and other articles of great weight; that they desired especially to use the fourth floor of said store No. 144 for storing therein iron, wire, stoves and other articles of great weight, and that they needed for that purpose a strongly built building;" that said defendants *Rees* then- and there stated and represented to the defendants *Lindemann* that said stores were strongly built, and the floors thereof capable of sustaining great weight, and fit for the purposes for which said defendants *Lindemann* desired to use the same as aforesaid; that said fourth floor of said store No. 144 would sustain, and they, the said *Lindemanns* could safely store and place thereon, a weight to the amount of 200 pounds to each square foot of said floor; that thereupon the said defendants *Lindemann,* relying upon said statement and representations of said defendants *Rees,* then and there agreed to lease said premises from the said defendants *Rees;* and that pursuant thereto the said defendants *Rees* on the 17th day of November, 1884, did lease, demise, and let said store No. 146, and said fourth floor of said store No. 144, to the defendants *Lindemann,* as a shop and warerooms, for the manufacture, storage, and sale of stoves, iron, and other articles as above stated, for the term of five years from May 1, 1885, said lessees yielding and paying therefor to the said *Rees* the annual rent of $1,700.

(3) The complaint further alleges as a fact "that it was understood and intended at the time said premises were leased as aforesaid, on the part of all the defendants,— the defendants *Rees* and *Lindemann,*— that the same were to be used for the purpose aforesaid; but this plaintiff avers that said premises, and especially said fourth floor of said store No. 144, was at the time said lease was made, and

AUGUST TERM, 1887. 445

The Brunswick-Balke-Collender Co. vs. Rees and another, imp.

ever since has been, unfit for the purposes for which they were leased as aforesaid; that said floor of said fourth story was not strongly built, and was unfit for storing stoves, iron, hardware, and other articles of great weight; that it could not sustain, and that it was not safe to place thereon, weight to even the amount of one hundred pounds to the square foot; that said representations and statements of the said *Rees* were false and untrue, as the said defendants *Rees*, and each of them, well knew, or had reason to know."

(4) The complaint then alleges that on the 13th day of April, 1886, the defendants *Rees* leased to the plaintiffs the first and second stories of store No. 144 West Water street, for a shop and warerooms for the manufacture and sale of billiard tables, and other merchandise, for the term of five years from May 1, 1886, for an annual rental of $1,000 for the first two years, and $1,200 for the last three years, and that they went into possession under said lease, and remained in possession, on the 24th day of May, 1886, when the injury complained of happened.

(5) The complaint then alleges that on or about the 24th day of May, 1886, and while the said *Lindemanns* were occupying the premises leased to them by the defendants *Rees*, and while the plaintiffs were occupying the premises leased to them by said defendants *Rees*, the said *Lindemanns*, relying upon the representations of the said defendants *Rees*, that said floor was fit and strong enough to carry a weight of 200 pounds to the square foot, and using said fourth floor of said store No. 144 for storage as aforesaid, carelessly and negligently placed and stored thereon a great amount of iron, wire, and other articles of great weight, of a like character, weighing in all about 98,000 pounds; that such iron, wire, and other articles were stored and placed on said floor in a space of about thirty feet long and nineteen feet six inches wide, making a burden of about 167 pounds to the square foot, on said floor, which was a much greater

weight than is ordinarily put upon the fourth floor of a store, and more than the defendants *Lindemann* would have stored on said floor, had they not been so misinformed as to its strength by said defendants *Rees.* That thereupon, on said 24th day of May, 1886, by reason of such great weight of iron, wire, and other articles placed thereon, as aforesaid, and by reason of said floor being unfit for the purposes for which it was leased and used as aforesaid, the said floor gave way, and both the floor with the said iron, wire, and other articles stored thereon broke down through the remaining floors of said store, including the floors occupied by the plaintiff as aforesaid, and fell into the basement of said building; that thereby and by reason of the fault and negligence of said defendants *Rees* in leasing for storage as aforesaid said premises, and by reason of their misrepresentation as to the strength of the said fourth floor of said store No. 144, and by reason of the weakness of said floor, and its unfitness for the purposes for which it was leased and used as aforesaid, and by reason of the fault and negligence of the said defendants *Lindemann* in storing and placing on said floor such great weight as aforesaid, the goods and wares of this plaintiff were injured and destroyed, and the plaintiff otherwise greatly injured and damaged. There are other allegations setting out the special damage done to the plaintiff.

To this complaint the defendants *Rees*, the landlords, and the defendants *Lindemann*, the tenants, demurred separately, alleging the following causes of demurrer: (1) That several causes of action are improperly joined. (2) That the complaint does not state facts sufficient to constitute a cause of action against these defendants.

The demurrer of the defendants *Rees*, the landlords, was sustained, and the demurrer of the defendants *Lindemann*, the tenants, was overruled by the court below. From the order sustaining the demurrer of the defendants *Rees* the

plaintiff appeals, and from the order overruling the demurrer of the defendants *Lindemann* said *Lindemanns* appeal.

*Frank M. Hoyt*, for the plaintiff.

· Upon the appeal from the order sustaining the demurrer of the defendants *Rees*, he argued that by simply leasing premises for storage purposes, which were insufficient therefor, they made themselves liable for the injury to the plaintiff, even if they did not know their condition. *Godley v. Hagerty*, 20 Pa. St. 387; *S. C.* 59 Am. Dec. 731. But in this case they did know and misrepresented the facts, and are clearly liable. *City of Lowell v. Spaulding,* 4 Cush. 277; *S. C.* 50 Am. Dec. 775, and cases cited; *Boston Beef P. Co. v. Stevens*, 12 Fed. Rep. 279; *Albert v. State*, 66 Md. 326; *House v. Metcalf*, 27 Conn. 631; *Helwig v. Jordan*, 53 Ind. 21; *Swords v. Edgar*, 59 N. Y. 28; *Wolf v. Kilpatrick*, 101 N. Y. 146; *Minor v. Sharon*, 112 Mass. 477; 1 Thompson on Negligence, 317. Nor is their liability affected by the fact that the act of the tenants of the upper floors contributed to the injury. *Scott v. Hunter*, 46 Pa. St. 192; *Walsh v. Mead*, 8 Hun, 387; *Sessengut v. Posey*, 67 Ind. 408. Both landlords and tenants joined in the wrong and are liable in the same action. Shearman and Redfield on Negligence, sec. 514; *Irvine v. Wood*, 51 N. Y. 224; *Hundhausen v. Bond*, 36 Wis. 29.

Upon the appeal of defendants *Lindemann*, he argued that the general averment of negligence on their part was sufficient. *Young v. Lynch*, 66 Wis. 514; *Irvine v. Wood*, 51 N. Y. 224. The tenants were liable for a negligent use of the premises, though the landlord was also liable because of the negligent construction. Wharton on Negligence, sec. 791; Wood's Landlord and Tenant, 928; Addison on Torts (2d ed.), sec. 239; *Edwards v. Halinder*, Poph. 46; *Coupland v. Hurdringham*, 3 Camp. 398; *Eakin v. Brown*, 1 E. D. Smith, 44.

For defendants *Rees*, upon the plaintiff's appeal, the cause

was submitted on the brief of *Jenkins, Winkler, Fish & Smith.* They contended that those defendants were not liable on the ground of nuisance. *Knauss v. Brua,* 107 Pa. St. 88; *Fow v. Roberts,* 108 id. 491; *Fish v. Dodge,* 4 Denio, 317; *Leonard v. Storer,* 115 Mass. 86, 89; *Mellen v. Morrell,* 126 id. 545; *McCarthy v. York Co. Sav. Bk.* 74 Me. 315; *Swords v. Edgar,* 59 N. Y. 35; *Rich v. Basterfield,* 4 Man. Gr. & Scott, 783, 805; *Saltonstall v. Banker,* 8 Gray, 197. Nor were they liable on the ground of negligence, as they did not know or have reason to know that the floors were weak and unsafe. *Edwards v. N. Y. & H. R. Co.* 98 N. Y. 250; *Naumberg v. Young,* 44 N. J. L. 331; *Wilkinson v. Clauson,* 29 Minn. 91. Their representations were mere expressions of opinion. *Lindsay v. Mulqueen,* 26 Hun, 485. And they were in no sense continuing. *Fowler v. Stevens,* 17 J. & S. (N. Y.) 479. Nor were they the proximate cause of the injury. *Silver v. Frazier,* 3 Allen, 384.

For the defendants *Lindemann,* the cause was submitted on the brief of *Julius E. Roehr.* He took the ground that these tenants were not liable as for continuing a nuisance created by the landlord, for want of notice. *Slight v. Gutzlaff,* 35 Wis. 675; Cooley on Torts, 611; 1 Thompson on Negligence, 317; *Brown v. Cayuga & S. R. Co.* 12 N. Y. 486; *Conhocton S. R. v. Buff., N. Y. & E. R. Co.* 51 N. Y. 573. Nor were they liable on the ground of negligence, as no wrongful act or breach of positive duty was charged or shown. *Cole v. McKey,* 66 Wis. 505; *Cahill v. Layton,* 57 id. 600; *Griswold v. C. & N. W. R. Co.* 64 id. 652; *Moore v. Goedel,* 34 N. Y. 527; *Killian v. Power,* 51 Pa. St. 429; *Carstairs v. Taylor,* L. R. 6 Exch. 217; *Ross v. Fedden,* L. R. 7 Q. B. 661; *Parrott v. Barney,* 2 Abb. C. C. 197; *Parrott v. Wells, Fargo & Co.* 15 Wall. 524; *Odell v. Solomon,* 99 N. Y. 635.

TAYLOR, J. We will first consider the appeal from the order sustaining the demurrer of the defendants *Rees.* As

to them, the facts are these: They owned the whole build-
ing No. 144. They let the two lower floors of the building
to the plaintiff, and had previously let the upper floors to
the defendants *Lindemann*, for the purposes set out in the
complaint. Having let the lower floors to the plaintiff, the
law imposed a duty upon the lessors that they should not
so use the upper part of the building as to endanger the lives
of the plaintiffs, or their property, while in the lower part
of said building, as their tenants. This would seem an
almost self-evident proposition, had the landlords them-
selves been in the actual occupation of said upper floors.
But it is said that they were not in such actual possession,
and the plaintiffs knew the fact that such floors were in
possession of the tenants of said landlords when they took
their lease, and consequently the landlords owed no duty
to the plaintiffs during the tenancy of the upper tenants to
protect them against the acts of such tenants, which might
endanger the safety of the lives or property of the plaintiffs
as tenants of the lower floors. This contention is sound to
a certain extent, but only to a certain extent. I am, how-
ever, of the opinion that when the landlords let the lower
rooms to the plaintiffs they impliedly agreed that they had
not authorized the tenants occupying the upper floors to
use them in such a way as to endanger their lives or prop-
erty in the lower floors; but if there be no such implied
agreement, the general rules of law render them liable for
injuries resulting to third parties when they knowingly let
the premises to tenants to be used for purposes which they
are unfitted for.

In *Edwards v. N. Y. & H. R. Co.* 98 N. Y. 245, 249, a
case which goes as far as any case to be found in the books,
in relieving the landlord from injuries resulting from the
improper use of tenements in the possession of his tenants,
still in that case the court lays down the rule that "if the
landlord be guilty of negligence or other *delictum* which

leads directly to the accident and wrong complained of, he is liable; if not so guilty, no liability attaches to him. If he lets a building or warehouse knowing that it is so weak and imperfectly constructed that the floors will break down from the weight necessarily to be placed upon them, his negligence imposes liability upon him for injury to the person or property of any one who may lawfully be upon the premises using them for the purposes for which they are demised." "If one builds a house for public amusements or entertainments, and lets it for those purposes, knowing that it is so imperfectly and carelessly built that it is liable to go to pieces in the ordinary use for which it was designed, he is liable to the person injured through his carelessness. . . . It is but a just and reasonable application of the maxim, *sic utere tuo ut alienum non lædas.*"

In *Albert v. State*, 66 Md. 325, the court say: "We think it may be held as well settled in this state that where the owner of a wharf leases or rents it out, and, at the time of such renting, the wharf was in an unsafe condition for the use the lessor knew it was to be put to, and the owner knew, or by the exercise of reasonable diligence could have known, of its condition, and that one who was lawfully on the wharf, and was injured in consequence of its condition, that the owner is liable."

In *House v. Metcalf*, 27 Conn. 631, 640, the court use this language: "The defendant contends that the mill being at the time of the accident in the exclusive occupation of his tenant, and he having no rightful control over it during the continuance of the tenancy, he was for that reason exonerated from all liability for injuries occasioned by its use. But every one who aids, abets, instigates, authorizes, or commands, as well as every one who actively participates in the commission of a tort is himself a principal tort-feasor, and liable as such. And the facts claimed by the defendant, and found by the jury, that at the time of the accident

the wheel was in the same condition as when the lease was made; that it was used in the same manner contemplated and intended by the parties to the lease; — and that for such use the defendant was to be paid compensation by way of rent,— so far from exonerating him from, establish his legal liability for the plaintiff's injury."

In a case lately decided in the supreme court of Rhode Island (*Joyce v. Martin*, reported in 36 Alb. Law J. 272; 10 Atl. Rep. 620), the learned court, after citing and commenting upon the cases bearing upon the question, say "that some of the cases cited are cases in which the lessors were held liable to respond in damages, because the premises from which the injuries were received were in such a state as to be nuisances, public or private, when let; but others are cases in which the lessors who were held to respond because the premises let by them for rent or profit, were let to be used for purposes for which they were not fit or safe to be used, and because the lessors knew when they let them the purposes for which they were to be used, and also knew, or ought to have known, that they were not fit or safe to be so used," and the court cited *Godley v. Hagerty*, 20 Pa. St. 387, which case was reaffirmed in *Carson v. Godley*, 26 Pa. St. 111. These were well considered cases, and the argument of the learned court seems to us conclusive. The defendant was the landlord; he had himself built the warehouses, and let them to the United States for the storage of heavy goods. They proved of insufficient strength to sustain the weight placed in them by the tenant, the United States, and, while occupied and used by the tenant, they fell and injured the plaintiff, who brought the action. After a very able review of the cases bearing upon the question involved in the case, the court say: "Had it [the building] fallen before it was used at all,— had the superstructure been so defective as to be unable to sustain itself,— it would have been indictable as a common nuisance, and

nobody doubts that the owner, at whose instance it was erected, would have been answerable to individuals for the damage occasioned; but the wrong consisted not in erecting walls incapable of standing alone, but in building and renting the store for a specific purpose for which it was unfit and unsafe. In itself it may not have been a common nuisance, but the maxim *sic utere,* is not limited to common nuisances. . . . Be it then that the store was a lawful structure, the defendant so used it as to hurt the plaintiff in his property, and this was to violate a fundamental principle of law. With his eyes open to the fact that the government would use his store-house for heavy storage, he let them have it, knowing that it was unfit for such use, and he inserted no word of caution or restraint in the lease. . . . Tempted by a large rent, he permitted this building to be subjected to burdens too heavy for it to bear, though lighter than the tenant had the right to impose, and herein is the ground of his liability."

The cases above cited, we think, state the law correctly. No one, we think, would question the right of the plaintiff against the landlord in this case, if he had been himself in the actual occupation of the premises, and caused it to break down by overloading it, especially if it were shown that he knew that he was placing a greater load upon it than it could be reasonably expected to bear. Can it make any difference with his liability to third persons that he has not overloaded it himself, but has let it to another, and at the same time authorized him to overload it, and so caused the injury? We think not. Under the allegations of the complaint in the case at bar, the landlord is more culpable than the tenants. If the allegations of the complaint are true,— and for the purposes of this case they are admitted to be true,— the tenants were clearly induced to overload the upper floors of the building in question, by reason of the declaration and assurance of the landlords, at the time

they took their lease, that they could safely so load them; and that the building was sufficiently strong to sustain such load, and even a much greater one. It is alleged in the complaint that the landlords knew when they leased these upper floors that the tenants desired to use such floors for heavy storage; that they also knew that such floors were not of sufficient strength for such use. Under these allegations the landlords are joint wrong-doers with the tenants in overloading the floors, and causing them to fall, and so inflicting an injury upon the plaintiffs. Their culpability, under the facts alleged in the complaint, is greater in fact than that of the tenants, who acted upon their representations, and probably relying upon the superior knowledge of the landlords as to the strength of such floors. We are very clear that the allegations of the complaint state a good cause of action against the defendants *Rees*, and that the court erred in sustaining their demurrer to the complaint.

That the learned county court rightly held that the complaint stated a good cause of action against the defendants *Lindemann*, the tenants, hardly admits of a doubt. The law compels every man to so use his own as to cause no unnecessary injury to his neighbor. They did so use these rooms as to destroy the plaintiffs' property. The charge in the complaint is that the floor fell because overloaded by the *Lindemanns*. They had no right to load the floors beyond their capacity, and doing so is a wrong, and, if the damage occurs by reason of such wrong, they are responsible. If it were necessary to allege the negligence of the tenants in overloading the upper floor, it is sufficiently alleged in the complaint. See *Young v. Lynch*, 66 Wis. 514.

It is no objection to a recovery against the tenant that a recovery may be had for the same wrong against the landlord. This is fully sustained by the authorities above cited.

The facts stated in the complaint, independently of the general allegation of negligence, are sufficient to constitute a cause of action against the tenants. If the plaintiff proves the facts alleged in its complaint, it seems to us that it will have made a *prima facie* case, at least, against the tenants, and they will be put to proof, if they have any, showing that it was an inevitable accident, or that the floor fell from some other cause than from their overloading it. Wood, Landl. & T. 928; *Killion v. Power*, 51 Pa. St. 429; *Moore v. Goedel*, 34 N. Y. 527; Whart. Neg. (2d ed.) § 791; *Edwards v. Halinder*, Poph. 46.

*By the Court.*— The order sustaining the demurrer of the respondents *Rees* is reversed; and the order overruling the demurrer of the appellants *Lindemann* is affirmed; and the cause is remanded for further proceedings according to law.

Lyon and Orton, JJ., dissent.