JAMES E. KEELER, *p. a., vs.* THE LEDERER REALTY CORPORATION *et al.*

PROVIDENCE—DECEMBER 14, 1904.

PRESENT: Tillinghast, C. J., Douglas and Dubois, JJ.

(1) *Landlord and Tenant.   Public Nuisances.   Negligence.   Duty of Lessor to Strangers.*

Where the premises demised are in such a condition as to constitute a public nuisance at the time of the letting, the lessor is liable for injuries sustained by a stranger subsequent to the letting while lawfully using the sidewalk adjacent to the premises, regardless of the length of time for which the lease is to run.

(2) *Landlord and Tenant.   Public Nuisances.   Duty of Lessor to Stranger. Joint Duty of Lessor and Lessee to Stranger.*

Where there has been a public nuisance of continued existence upon demised premises, the lessor and lessee may both be held liable for damages resulting therefrom.

TRESPASS ON THE CASE.   Heard on demurrer to declaration, and demurrer overruled.

TILLINGHAST, C. J.   This is trespass on the case for negligence.

The declaration sets out that the defendant Julie P. Adie Anthony, on the first day of April, 1903, was and for a long time prior thereto had been the owner of a certain estate with a dwelling house thereon, situated on Mathewson street, a public highway in the city of Providence; that said dwelling house is located flush, or nearly so, with the sidewalk which forms a part of said highway, and has a roof which pitches towards the street, and a rain-trough thereto attached, at the eaves of said roof, at a height of twenty feet above the sidewalk and extending the entire length of the roof, and so constructed as to project over said sidewalk.

And the plaintiff avers that on said first day of April the defendant Anthony had carelessly and negligently allowed and permitted said rain-trough to be and become rotten, decayed, weak, and warped, and insecurely fastened and sustained in position, and that the same then and there was, and for a long time prior thereto, to wit, one year, had been, by reason of said carelessness and negligence, rotten, decayed, warped, and insecurely fastened and sustained in position, and was then and there likely to fall. By reason whereof it was unsafe and dangerous and was a menace to persons lawfully on said highway, all of which the defendant Anthony then and there knew or by the exercise of reasonable diligence might have known.

And the plaintiff further avers that said Anthony on said first day of April, 1903, while said dwelling house and the rain-trough connected therewith, as aforesaid, were unsafe and dangerous and a menace to persons lawfully on the highway, rented said estate, including the dwelling house, to the defendant Lederer Realty Corporation, by a written lease duly executed by the parties, for the term of ninety-five years at an annual rental of twelve hundred dollars to be paid to said Anthony, and that thereupon said corporation entered into the control and possession of said estate and so continued to the date of the plaintiff's writ, during which time said rain-trough was negligently and carelessly allowed and permitted to remain in its unsafe and dangerous condition and likely to fall, of all which the said defendant corporation then and there knew or by the exercise of reasonable diligence could have known.

And the plaintiff further avers that on the 9th day of January, 1904, he was lawfully on said sidewalk abreast of said dwelling house, and in the exercise of due care, when a quantity of snow and ice upon said roof slid down upon and into said rain-trough, whereupon, by reason of its unsafe and dangerous condition, it gave way and fell, together with said snow and ice, upon him, whereby he was greatly injured, etc.

To this declaration the defendant Anthony demurs, on the ground that on January 9, 1904, the day of the injury to the

plaintiff as set forth in his declaration, and under the facts alleged therein, she was under no obligation to the plaintiff to keep the rain-trough mentioned in the declaration in such a condition as not to injure the plaintiff.

She also files a special plea in which she sets out the lease referred to in the plaintiff's declaration, and alleges that the possession and control of the said Lederer Realty Corporation, of said estate and dwelling house as alleged in said declaration was under and by virtue of said lease and not otherwise. Wherefore she prays judgment if the plaintiff ought to have or maintain his action against her.

The Lederer Realty Corporation also demurs to the declaration on the grounds, (1) that it is not alleged therein that it owed any duty to the plaintiff; (2) that it does not show any facts or circumstances from which a duty to the plaintiff can be implied; (3) that it does not appear whether the plaintiff was a traveler on the highway or an occupier of the dwelling house mentioned in the declaration; and (4) that it is uncertain and insufficient in that, while it alleges that the plaintiff was lawfully on said sidewalk, yet no sufficient facts are set forth showing in what manner he was on said sidewalk, and hence the allegation that he was lawfully there states merely a conclusion of law.

The plaintiff has demurred to the defendant Anthony's first plea on the ground that the premises mentioned in the declaration at the time of the execution of the lease were and for a year prior thereto had been unsafe, dangerous, and a menace to persons on the highway, and continued to be so down to the time of the injury complained of, namely, January 9, 1904, and that the defendant Anthony is not relieved from her duty to the plaintiff by reason of any provisions, stipulation or contract in said lease, and can not escape her liability in law to the plaintiff by reason of that duty, as set forth in the declaration.

The provisions of the lease, in so far as they have any bearing upon the question now before us, are (1) that the lessee covenants to hold the lessor harmless and indemnified against all loss, costs, damages, etc., under any claims, by any third person, based upon the neglect or default of the lessee, its

successors or assigns, or its tenants, agents, or servants upon or about the demised estate, or in the erection, maintenance, or use of any building, structure, fixture, etc., thereon; and (2) that it will keep all buildings in good repair, ordinary wear excepted.

While there is much discussion in the books and some conflict of authority regarding the liability of a landlord for personal injuries sustained by a stranger by reason of defects in the premises let, yet the following propositions of law, which were adopted by this court in *Joyce* v. *Martin*, 15 R. I. 558, relating thereto, seem to be well established, viz.: "First. Where property is demised and at the time of the demise is not a nuisance, and becomes so only by act of the tenant while in his possession, and injury happens during such possession, the owner is not liable. Second. But where the owner leases premises which are a nuisance, or must in the nature of things become so by their use, and receives rent, then, whether in or out of possession, he is liable for injuries resulting from such nuisance." The law as thus stated was followed in *Adams* v. *Fletcher*, 17 R. I. 137, and affirmed in *Henson* v. *Beckwith*, 20 R. I. 165.

In addition to these two propositions of law, another, and one which is well supported by the modern authorities, both English and American, is this, viz.: That where a landlord demises premises which are so defective and out of repair as to be a nuisance at the time of the demise, he is responsible to third persons for injuries resulting from the dangerous condition of the premises, notwithstanding the tenant is bound under the lease to keep the premises in proper repair.

In Mr. Taylor's standard work on Landlord and Tenant, as revised by Buswell (9th ed. § 175), the law is well stated in the following language: "The landlord's liabilities, in respect of possession, are in general suspended as soon as the tenant commences his occupation. For where there is neither privity of estate nor privity of contract, the owner of premises is not liable for injuries sustained by third persons unless, by invitation, express or implied, the owner induces them to come upon the premises. But where injuries result to a third person from

the faulty or defective construction of premises, or from their ruinous condition at the time of the demise, or because they then contain a nuisance, even if this only becomes active by the tenant's ordinary use of the premises, the landlord is still liable notwithstanding the lease, although, as between lessor and lessee, the latter is presumably liable for a nuisance upon the leased premises."

In *Moody* v. *Mayor, etc.*, 43 Barb. 282, it is held that the owners of a pier are liable for injuries sustained by an individual by reason of its defective construction and dangerous condition, notwithstanding the premises are at the time in the possession of a tenant who has covenanted to keep the pier in repair, if defects existed when the owners leased the property to him.

In that case the court said: "The injury to the plaintiff in the present case arose not from any want of repairs arising out of the use, but from the defective construction and dangerous condition of the pier. The defendants, the owners, let the pier 'with the defect complained of,' and are consequently liable for the injury sustained by the plaintiff."

In *Ingwersen* v. *Rankin et al.*, 47 N. J. L. 18, it is held that he who creates a nuisance on his own premises can not escape liability for its continuance by demising the premises whereon the nuisance is. Such liability will exist, although the tenant,. by the demise, stipulates to keep the premises in repair.

In delivering the opinion of the court in that case, Magie, J., said: "I am unable to bring my mind to the conclusion that the landlord's liability in such case will be discharged by reason of his having required the tenant to stipulate to keep the demised premises in repair. Such a view seems to have been taken in *Pretty* v. *Bickmore*, L. R., 8 C. P. 401, which case was followed and approved in *Gwinnell* v. *Eamer*, L. R., 10 C. P. 658. In my judgment it is impossible to reconcile those cases with the principle established by the leading cases or with reason. For it is absurd to say that one who is liable for a. continuing nuisance may escape that liability by merely taking a contract from another to remedy the nuisance by repairs. The tenant can not, either by reason of his tenancy or by reason

of his contract to repair, be interposed between the person injured by the nuisance and the landlord liable therefor. Shearm. & R. Negl. § 502."

In *Ahearn* v. *Steele*, 115 N. Y. 203, Earl, J., in an elaborate opinion relating to the respective · liabilities of landlord and tenant for a nuisance existing upon leased premises, said, amongst other things: "It is not the general rule that an owner of land is, as such, responsible for any nuisance thereon.   It is the occupier, and he alone, to whom such responsibility generally and *prima facie* attaches.   (*Pretty* v. *Bickmore*, L. R., 8 C. P. 401; *Kirby* v. *Boylston Market Assn.*, 14 Gray, 249; *City of Lowell* v. *Spaulding*, 4 Cush. 277; *Inhabitants of Oakham* v. *Holbrook*, 11 *id.* 299.)   The owner is responsible if he creates a nuisance and maintains it; if he creates a nuisance and then demises the land with the nuisance thereon, although he is out of occupation; if the nuisance was erected on the land by a prior owner, or by a · stranger, and he knowingly maintains it; if he has demised premises and covenanted to keep them in repair, and omits to repair, and thus they become a nuisance; if he demises premises to be used as a nuisance, or for a business, or in a way so that they will necessarily become a nuisance.   In all such cases I believe there is now no dispute that the owner would be liable. · But an owner who has demised premises for à term during which they become ruinous, and thus a nuisance, is not responsible for the nuisance unless he has covenanted to repair.   It has even been held in some cases that an owner may demise premises so defective and out of repair as to be a nuisance, and if he binds his tenant to make the repairs he is not responsible for the nuisance during the term.   (*Pretty* v. *Bickmore*, *supra*; *Gwinnell* v. *Eamer*, L. R., 10 C. P. 658; *Leonard* v. *Stoerr*, 115 Mass. 86.) But these cases are not in entire harmony with the decisions in our own State, and probably would not now be generally received as authority in this country or in England."

The learned judge also quotes from the opinion of the Supreme Court of Maine (*Nugent* v. *Bost. R. R. Co.*, 80 Me. 62, 77) the following: "It is settled law that where the owner lets the premises which are in a condition which is unsafe for the avowed purpose

for which they are let, or with a nuisance upon them when let, and receives rent therefor, he is liable, whether in or out of possession, for the injuries which result from their state of insecurity to persons lawfully upon them; for by the letting for profit he authorized a continuance of the condition they were in when he let them, and is, therefore, guilty of misfeasance." In support of this doctrine Judge Earl cites *Joyce* v. *Martin*, 15 R. I. 558.

The case of *Samuelson* v. *Cleveland Iron Mining Co.*, 49 Mich., 164, which is relied on by defendant's counsel, does not seem to us, when read as a whole, to be in conflict with the view which we have taken, but on the contrary, by implication, to sustain it.   For there it was not shown that the roof of the mine by which the injury was caused was in a dangerous condition when possession of the mine was delivered under the contract, but the evidence tended to prove the contrary.   And in view of that fact Cooley, justice, said: "It remains to be seen, then, whether a personal duty to guard against danger to the miners was still incumbent upon the defendant as owner of the mine, and was continuous while the mine was being worked by the contractors.   Mere ownership of the mine can certainly impose no such duty.   The owner may rent a mine, resigning all charge and control over it, and at the same time put off all responsibility for what may occur in it afterwards. If he transfers no nuisance with it, and provides for nothing by his lease which will expose others to danger, he will from that time have no more concern with the consequences to others than any third persons."

The late case of *Terminal Co.* v. *Jacobs*, 109 Tenn. 727, also relied on by defendant's counsel, is practically to the same effect, as the court, Mr. Chief Justice Beard delivering the opinion, says: "There is no doubt that, should a landowner erect or create a nuisance upon his land, he can not rid himself of liability arising therefrom by a demise of the property to another.   This was laid down as early as *Rosewell* v. *Prior*, 12 Mod. 639), where it is said that: 'Before his assignment over he was liable to all consequential damages, and it is not in his power to discharge himself by granting it

over, more especially where he grants it over reserving rent, whereby he agrees with the grantee that the nuisance may continue and has a recompense, viz., the rent for the same.'" See also *Knauss* v. *Brua*, 107 Pa. St. 85; Amer. & Eng. Ency. L. 2d ed. vol. 18, 238-9; *Peoria* v. *Simpson*, 110 Ill. 294; *Marshall* v. *Heard*, 59 Texas, 266.

We have examined the other cases cited by counsel for the defendant Anthony, and while some of them, doubtless, sustain the position taken by him, yet we are of opinion that the decided weight of authority, as well as the better reason, sustains the position which we have taken, and hence we do not deem it necessary to further pursue our investigation upon this branch of the case.

But counsel for the defendant Anthony argues that, in view of the fact that the lease in question is for the very long and unusual term of ninety-five years, and that no provision is made therein for any re-entry by the lessor for condition broken, a different rule should apply from that which obtains in ordinary cases of letting. In other words, he contends that a lease for ninety-five years is in substance an absolute conveyance of the property for that time, during which the lessee can deal with it as it sees fit, and hence that no liability can attach to the lessor by reason of any accident which has happened since said demise. He says: "This lease was far more nearly analogous to an absolute conveyance than to an ordinary short lease so far as any liability of the lessor is concerned. Had it been an absolute conveyance, the grantor would have been liable only for damages suffered prior to the grant and not for any occurring afterwards. If the ground of a lessor's continued liability is only that the lease contemplates the continuance of the nuisance or defect—that is, that the premises are let for use in the same condition they are in at the letting— then this case falls within the principle of an absolute grant and not within the reason of the exception holding the lessor liable."

While there is some force in this argument, we do not think it is controlling. It is true that the lease is somewhat unusual in the length of the term which it covers, and also in that it

does not provide that the lessor may re-enter 'and determine the same for condition broken. But it nevertheless very carefully and fully protects all the rights of the lessor in other and equally effective ways. For instance: While perhaps the lessor can not re-enter and take possession for non-payment of rent, yet it is expressly provided that in such case she may proceed to sell the premises, including any buildings and improvements which the lessee shall place thereon, and thereby make herself whole on account of any arrears of rent or of any other failure on the part of her tenant to fulfill his contract. So that it is in her power to promptly dispossess the lessee of the premises and of all rights which it may have under its lease. Ample remedies in favor of the lessor are also provided for other breaches of the covenant contained in the lease, to be performed on the part of the lessee; and hence, notwithstanding the great number of years for which it is given, the lessor is practically as fully and completely protected in all her rights as though she had reserved the ordinary right of re-entry for condition broken. And having such rights as those referred to, we fail to see why she does not continue to exercise, to all practical intents and purposes, the same control over the premises as though the lease were for a shorter term and contained the ordinary provisions relating to re-entry. Nor do we see, in view of the rights retained by the lessor, and the continued interest which she has in the premises, as owner and landlord, that any different rule should obtain, in her favor, regarding the dangerous condition of the premises or any part thereof, at the time of the execution of the lease, than ordinarily obtains in other cases of letting. In short, we are of opinion that, where real estate is in such a condition as to constitute it a public nuisance at the time of the letting, the law is that the lessor thereby renders himself liable for injuries sustained by a stranger under such circumstances as are set out in the declaration before us, regardless of the length of time for which the lease is to run.

That the premises in question at the time of the letting thereof were, and for a considerable time previous thereto had been, a public nuisance—assuming that the allegations con-

tained in plaintiff's declaration are true, as we must on .demurrer—there can be no doubt.   For it may be stated as a general proposition that every use and enjoyment by one, of his own property, in such a manner as to violate the rights of the public in an essential degree is a public nuisance.

And to maintain a weak, warped, and rotten eaves-trough twenty feet above and projecting over the sidewalk of a public street in the city of Providence, which is a menace to every person passing along said highway, is clearly violative of the rights of the public.   And whoever is injured by reason of the existence of such a nuisance while lawfully using such sidewalk, as the plaintiff was at the time of the accident in question, has a remedy therefor against the person or persons responsible for the dangerous condition of the premises.

As to the point made by counsel for defendant Anthony, that the proximate cause of the injury to plaintiff was the sliding of the ice and snow from the roof, we need only say that, even conceding that this was *a* proximate cause of the accident, yet the giving way of the eaves-trough was also a proximate cause thereof, and, indeed, *the* most proximate cause in point of time.   And it is well settled that, where two causes combine to produce the injury, both in their nature proximate, one of them being a natural cause, for which neither party is responsible, and the other being one for which the defendant is responsible, it is no defence that the former cause concurred with the latter in producing the injury.

As to the demurrer interposed by the defendant Lederer Realty Corporation, we do not understand that it is relied on by counsel for that corporation as being a substantial demurrer, but only one relating to formal defects.   And this being so, it should be disposed of by the Common Pleas Division.   *Miller* v. *Boyden*, 22 R. I. 441.

But in view of the peculiar circumstances of the case, and the wish of counsel that all the questions raised by the respective parties may be promptly disposed of, we have examined the particular grounds of the last mentioned demurrer, and do not find that they are well taken.

(2)   As we are clearly of opinion, under the authorities herein-

before cited, that where there has been a public nuisance of continued existence upon the demised premises, as is shown to have been the case here, the lessor and lessee may both be held liable for damages resulting therefrom, *Swords* v. *Edgar, supra; Joyce* v. *Martin, supra,* our conclusion is that the demurrers of the defendants, respectively, to the plaintiff's declaration must be overruled, and that the plaintiff's demurrer to the defendant Anthony's special plea must be sustained.

Case remanded to the Common Pleas Division for further proceedings in accordance with this opinion.

*George T. Brown,* for plaintiff.

*Miller & Carroll,* for defendant corporation.

*Tillinghast & Carr,* for defendant Anthony.