VICTORIA MORETTI *vs.* C. S. REALTY COMPANY.
CLINO MORETTI *vs.* SAME.

JULY 13, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

342

CONDON, J.   These actions of trespass on the case were brought by husband and wife on a cause of action arising out of an accident to the wife and were tried together in the superior court.   At the conclusion of the evidence a verdict for the defendant was directed in each case.   Each plaintiff has prosecuted a bill of exceptions to this court. Since the same question is raised by each plaintiff and the husband's case is dependent upon that of his wife, we shall hereinafter refer for convenience solely to her case as though it were the only one before us.

The declaration consists of two counts, one in nuisance and the other in negligence.   In directing a verdict for the defendant the trial justice apparently found that there was no evidence on which the jury could have reasonably

based a verdict for the plaintiff on either count. After carefully perusing the transcript we are of the opinion that he erred in so finding. In support of that view we shall hereinafter discuss the evidence in some detail and also consider certain principles of law applicable thereto.

The evidence and the reasonable inferences to be drawn from it in favor of the plaintiff disclose the following facts on which the jury could have rested a verdict. On June 28, 1946 while walking on Hayden street in the downtown business district of Providence the plaintiff was hit in the face by an old, dirty, and rusty blade of a ventilator fan which had been propelled with great force from an unguarded hole or opening in the wall of a building at the corner of Fountain and Hayden streets. She was thereby seriously injured and disfigured, and required treatment at the hospital to which she was taken.

The defendant was the owner of the building at the time of the accident and had owned it for many years prior thereto. In 1935 it let the entire first floor to John A. Notte under an oral letting from month to month. The first floor was one large room with a stairway about in the center leading from the front door of the building on Fountain street. This stairway was for the use of tenants on the second floor. At first Notte used the whole floor for his business but later in 1941 or 1942, on his own volition and without consulting his landlord, he partitioned the store at the stairway into two stores. One was at the corner of Fountain and Hayden streets with a plate glass window on the latter street. Without asking the landlord's permission he rented that store to certain persons, not named in the evidence, for a restaurant. In order to get air into the kitchen they made an opening above the plate glass window in the Hayden street wall and placed therein an electrically operated ventilator fan. In 1943 they moved and took the fan with them.

Notte then let the store to one DelMonico for a tailor shop. At that time the opening in the wall was blocked

by a piece of tin. DelMonico increased the size of the opening and had a larger fan installed by an electrician. The blades of this fan were about one foot in length. A reasonable inference from the evidence is that this opening was without a grating or guards of any kind on the street side.

In October 1945 DelMonico sold his tailor shop including the fan to Horace Bisante. On the day of the accident Bisante complained to Notte that the fan was not operating properly. Notte told him not to tinker with it but to get an electrician to examine it. A short time later he told Notte he had oiled it and it was working all right. But not very long thereafter the fan made a loud "grinding" noise and the blade became detached, flew out of the opening into Hayden street, and hit the plaintiff in the face.

Notte testified that each of his subtenants paid rent to him and not to the defendant. He also testified that he paid his rent to the defendant's collector who called at the store regularly each month. He admitted on cross-examination that the defendant must have known he had subdivided the premises and rented to subtenants but he insisted he had never asked the defendant's permission to subdivide or to make the opening in the wall for the ventilator fan. From the evidence it could be reasonably inferred that anyone inspecting the Hayden street wall of the building from the outside without going into the tailor shop would see the unguarded opening in the wall containing a relatively large ventilator fan. From the testimony of plaintiff's witnesses that the blade which flew into the street was old, dirty, and rusty and from Bisante's and Notte's testimony of the noise made by the fan on the day of the accident it could also be reasonably inferred that the fan was not in proper working condition.

From the above evidence the jury could reasonably have found that such fan situated as it was in the opening in the wall just above the traveled way was a public nuisance. The expulsion of its blade into the highway was a natural

346

and probable result of its age and poor condition and of the lack of safeguards on the opening into Hayden street to keep it from flying off into that street. An electrically operated ventilator fan, especially one in a partially worn-out and defective condition, in an unguarded opening in the wall of a building abutting on a public highway may well be deemed a menace to the safety of persons traveling thereon. As such it would be a public nuisance and if a traveler were injured thereby he would have a good cause of action against one who was responsible for maintaining his premises in a condition so hazardous to persons lawfully traveling on the highway. *Keeler* v. *Lederer Realty Corp.*, 26 R. I. 524.

The public has the right to the unobstructed use of the highway free of unnecessary hazards, and it is the duty of owners and occupiers of property abutting thereon to use it so as not to endanger members of the public while they are exercising such right. *Weilbacher* v. *J. W. Putts Co.*, 123 Md. 249; *King* v. *Hartung,* 123 Va. 185. "It would seem that all signboards, cornices, blinds, awnings and other things projecting over a walk, *or so situated with reference thereto that if they fall they may do injury to travelers, as well as things set against the building, or swinging doors, are nuisances, unless so secured as to be absolutely safe,* and the person maintaining them is liable for all injuries arising therefrom, except such as are attributable to inevitable accident." Wood on Nuisances, §275, p. 350. (italics ours)

When one of the public is injured by the fall of an object from premises abutting on the highway and in the owner's control such fact alone, in the absence of any explanation, is sufficient to raise a presumption of the violation of that duty. *Pindell* v. *Rubenstein,* 139 Md. 567. Unless the owner can show he was not at fault he is liable for the precipitation of the object into the street. 20 R. C. L., §69. The justice of this rule lies in the circumstances that the principal evidence of the cause of the accident is accessible to the party in control of the premises and inaccessible to

the victim of the accident. *Potts* v. *Armour & Co.*, 183 Md. 483. The cases generally are in accord on that doctrine. *Soriero* v. *Pennsylvania R.R.*, Ann. Cas. 1916 E. 1071, 1073; *Restaino* v. *Griggs Motor Sales, Inc.*, 118 N.J.L. 442.

In the case at bar the defendant owner has not sought to explain why the fan blade flew into the street or to excuse or justify the manner in which the fan was installed and maintained in the opening in the wall. On the contrary it contends that it was under no duty to concern itself with the condition of the premises, including the alteration of the wall, after they were let to Notte in 1935, as they were thereafter out of its control and beyond its power to abate any nuisance created thereon by Notte or his subtenants. In fact it contends that on the evidence here viewing it most favorably to the plaintiff a nuisance, if there was one, was created and maintained solely by others after it had let the premises to Notte and that under the law of this state in such a case the owner is not liable. *Joyce* v. *Martin*, 15 R. I. 558.

In that case this court said the law was settled that where property is not a nuisance at the time it is let but becomes so later *solely* by act of the tenant during the demise, and by reason thereof another is injured, the owner of the property is not liable. This is undoubtedly the law generally, and if there were no question here whether defendant really lost all control over his property by reason of the month to month letting we should be constrained to apply the law as there laid down. The reason for the rule is the legal inability of the owner to do anything to abate the nuisance on the premises due to lack of control thereof during the tenant's term. The rule itself is sound and we are in complete accord with it but in circumstances where the nature of the tenant's holding is such that the owner may in a comparatively brief time readily resume control of the premises at his option it ought to be applied if at all with some flexibility.

Where the owner has made a true demise of the premises

there can be no question concerning the application of the rule. In *Joyce* v. *Martin, supra,* there was such a demise, the premises in question having been leased for eight years. A demise at common law created an estate in the tenant. It was a conveyance, either in fee, for life, or for years, especially the latter. 1 Bouvier's Law Dictionary 834. Anything less than a term for years was not deemed a true estate.

A real difficulty exists, however, where there is a mere letting for less than a period of years and especially where the letting is from month to month as in the instant case. A tenancy of that nature detracts very little from the owner's right to control his property and hence presents slight obstacles to his resuming possession thereof whenever a public need therefor arises. True if he elects to regain possession of his property our statute requires him to give notice, general laws 1938, chapter 453, §4, but in the case of a month to month tenancy this can scarcely be said to be a serious barrier to the landlord exercising the power to abate a nuisance on his property if his tenant will not abate it himself or permit it to be abated by his landlord. If the tenancy were for a month instead of from month to month the landlord would be liable if after the nuisance had been created he accepted rent for another month and an accident occurred.

As far as strangers to the contractual relation between the landlord and the tenant are concerned we fail to see that it makes any real difference that in one case a notice is necessary to terminate the tenancy and in the other it is not. Strangers such as travelers on the highway "unlike licensees, servants, guests, etc., of the tenant do not derive their right to be where they are from the tenant, and the measure of the duties owing by the landlord to them is not, therefore, the same as that of his duties to the tenant." 16 R. C. L. §593. Where such a stranger to the relationship of landlord and tenant has been injured by a nuisance on the landlord's property the important element to consider

is whether the landlord, after the creation of the nuisance and before the accident, had a reasonable opportunity to regain control of the premises and abate the nuisance.

Looking at the problem from that viewpoint we are not disposed to set much store by the fact that in order for the defendant here to obtain control of his property he must give his tenant notice. Whatever might be the importance of that fact in a case involving the rights and duties of landlord and tenant within that contractual relationship it is in our opinion of little consequence in considering the duty which the law imposes upon a landlord toward travelers lawfully upon the highway. To such persons it is his duty to maintain his premises abutting on the highway so that they will not become dangerous. He may be absolved from that duty only where he has *demised* the entire premises to a tenant in whom he has vested exclusive possession and divested himself of any control thereof. *Marzotto* v. *Gay Garment Co.*, 11 N. J. Super. 368; *Klepper* v. *Seymour House Corp. of Ogdensburg, Inc.*, 246 N. Y. 85; *Higgins* v. *Polito*, 348 Pa. 152. "Anything less than the alienation of the entire property, either permanently, as by deed, or temporarily, as by lease, would leave the public without adequate protection." *Trustees of Village of Canandaigua* v. *Foster*, 156 N. Y. 354, 362.

In the case at bar defendant did not lease the entire building nor did he part with the entire possession and control thereof. There was a second floor which the tenant of the ground floor did not rent. Not even that floor was in the entire possession of the tenant as the tenants of the second floor had the right to use the common stairway which led from that floor to the ground floor of the building and to the common door thereof opening on to the sidewalk on Fountain street. Nor can the exterior walls of the building reasonably be said to have been in the control of the tenant although in the absence of express provision to the contrary he would have the right to use them in their existing condition in connection with his tenancy.

*Hannon* v. *Schwartz*, 304 Mass. 468. This, however, would not imply that he or his subtenants had the right to make openings in the wall without the landlord's consent.

Those facts taken in connection with the fact that the tenant's possession of the premises, however much it included, was based upon a mere letting from month to month are, in our opinion, sufficient to show that he did not have exclusive control of the wall wherein the alleged nuisance was maintained if indeed he had any measure of control over it at all without the cooperation of the landlord, express or implied. In this connection plaintiff read into the evidence certain portions of public laws 1909, chap. 472, "An Act In Amendment And Revision Of Chapter 688 Of The Public Laws, Entitled 'An Act In Relation To Buildings In The City of Providence And For Other Purposes,'" which among other things provided that any change, addition, or modification in construction and also any alteration in the external walls of any building shall not be undertaken without first obtaining a permit from the building inspector of the city upon a written application therefor by the owner or his agent. She relies on such evidence as furnishing a basis on which the jury could have found that defendant participated in creating the alleged nuisance.

Plaintiff did not present any evidence that the defendant had applied for such a permit but she argued that it could properly be assumed in the absence of evidence to the contrary that the defendant had complied with the provisions of that statute. There is authority for such contention. Where there was a statutory requirement for permission to make an excavation in a sidewalk it was held in *Jennings* v. *Van Schaick*, 108 N. Y. 530, that from the existence of the excavation itself over a considerable period without municipal objection it could be inferred that such permission was granted.

But the defendant argued that in the circumstances of the instant case the statute in question here does not

apply as the opening in the wall did not come within the purview of that statute. We are of a contrary opinion. One of the chief purposes of the statute was to assure public safety in the construction of the wall both as to those using the building and the general public on the highway. Certainly the breaking of a wall abutting the public highway for the purpose of making therein an opening into which a revolving fan was to be inserted was an alteration clearly within the purview of the statute in respect to highway safety.

If then it may be inferred from such evidence that the defendant obtained the permit for the opening in the wall it could reasonably be found to have participated in the creation of the alleged nuisance. On the other hand if it presented evidence showing that it did not actually apply for such a permit it would still be reasonable for the jury to infer that the defendant by tolerating the illegal alteration in the wall impliedly approved of it and thus indirectly participated in the creation of the alleged nuisance. The duty of complying with the building law was on the defendant and its continued violation of that law could be reasonably found to be a nuisance. *Knight* v. *Foster,* 163 N. C. 329. From these various points of view there was evidence from which the jury and not the court was entitled to determine whether the defendant in the circumstances and notwithstanding the existing tenancy from month to month was guilty of maintaining the alleged nuisance.

That view is not without support in several English cases in which similar opinions have been expressed. *Rex* v. *Pedly,* 1 A. & E. 822; *Gandy* v. *Jubber,* 5 Best & Smith 78; *Sandford* v. *Clarke,* L. R. 21 Q. B. 398 (1888). Whether those cases correctly state the law of England in this matter at the present time may be in some doubt in view of an undelivered judgment on appeal to the Exchequer in *Gandy* v. *Jubber,* 9 Best & Smith 15, and also in view of the case of *Bowen* v. *Anderson,* 1 Q. B. 164 (1893). From our read-

ing of the opinions in those cases, however, we are not certain that they overrule the earlier cases.

Whatever the status of the law may be in England at the present time we are disposed to follow the original opinion in *Gandy* v. *Jubber, supra,* at least where a tenancy of not more than a year is involved as in the *Sandford* case, largely because, in our opinion, the reasoning of the English justices in support of their opinions is sound, and is eminently realistic in its approach to the problem of a public nuisance to travelers on the highway arising under a mere oral letting for periods of short duration. In such a case the ease with which a landlord can regain control of his premises is an important consideration which we think should be weighed in the scales against him where he continues month after month to accept rent for premises which he knows or reasonably ought to know are a menace to the public and where he neglects to take any action to have the tenant abate it or to terminate the tenancy to enable him, the landlord, to abate it.

Some American cases have approved the decision in the original *Gandy* case and others have declined to follow it, but this opinion would be unduly prolonged if we undertook even briefly to summarize them here. Some are referred to in 32 Am. Jur., Landlord and Tenant, §760, p. 647. From our examination of most of those cases it would appear that none of them had occasion to consider the precise problem which we have here. However, we think that the expressions of certain American courts in dealing with somewhat similar problems, some of which we have hereinbefore quoted in another connection, point more or less to the view which we have taken.

In the circumstances of the installation and maintenance of the fan there is a further reason why the case should have been submitted to the jury. It is clear to us that there was evidence from which the jury could have reasonably drawn the inference that the defendant indirectly participated in the creation and maintenance of the alleged

nuisance, in that it permitted the installation and operation of the fan in an unguarded opening in the wall in such a position that it ought reasonably to have foreseen that injury to a pedestrian on the highway would probably result if the fan became detached and was propelled on to the highway through the opening in the wall. Regardless of the nature of the tenancy it was always within its power to abate such alleged nuisance, at least as far as travelers on the highway were concerned, without trespassing on the tenant's premises.

The defendant could have guarded the opening in the wall on the Hayden street side with a grating or screen which for all practical purposes would have suppressed the public menace. In such circumstances it has been held that notwithstanding the existence of the tenancy the landlord owed a duty to the public to abate an alleged nuisance on the exterior of the premises. *Mitchell* v. *Thomas,* 91 Mont. 370. The duty to keep one's premises abutting on the highway free from hazards to travelers thereon, it has been said, "is imposed by law for the public safety, its extent is measured by whatever public safety requires." *Trustees of Village of Canandaigua* v. *Foster,* 156 N. Y. 354, 362.

Therefore summarizing what we have hereinbefore discussed, it is our opinion that on either of two independent views of the evidence it was reasonable under the count in nuisance for the jury to find that defendant was liable to the plaintiff for the condition of its premises which was the proximate cause of her injuries. And it is also our opinion that under the count in negligence there was evidence from which the jury could have reasonably found that the defendant owed a duty to the plaintiff as a traveler on the highway to keep the exterior wall of its premises in such condition that she would not be injured by any unprotected opening made therein for the purpose of a revolving fan and that it had not exercised reasonable care in the performance of such duty.

In each case the plaintiff's exception to the direction of a verdict is sustained, and each case is remitted to the superior court for a new trial.

FLYNN, C. J.  I concur in the result briefly stated by the majority as to the count in negligence.  But the other count alleges that "because of its location and its condition, said fan constituted a nuisance * * *."  The alleged nuisance thus depends essentially on the location and condition of the fan.  In my opinion these were in the exclusive control of the tenant and as to them defendant had neither right nor duty in law to inspect or repair.  There is no evidence of previous noise or defects that reasonably could constitute constructive notice to defendant of the alleged defective condition and operation.  The undisputed evidence shows that the fan was not noisy or defective until the day of the accident.  Therefore whatever may be the possible liability of the defendant for continuing or maintaining a nuisance after constructive notice or in other circumstances, in my judgment there was no question of fact to be submitted to the jury on the nuisance alleged.

*Aram A. Arabian,* for plaintiffs.
*Adler & Zucker, Martin M. Zucker,* for defendant.