# Wytheville.

RICHMOND RAILWAY & ELECTRIC CO. v. HUDGINS.

June 12, 1902.

100   409
101   405

100   409
103   384
100   409
104   414

100   409
f108  541

100   409
109   381

1. NEGLIGENCE—*When Presumed.*—A presumption of negligence from the simple occurrence of an accident arises where the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it in similar cases; or where it is caused by the mismanagement or misconstruction of a thing over which the defendant has immediate control, or for the management or construction of which he is responsible. In the case at bar, the plaintiff in error was held liable for an injury inflicted on defendant in error while he was attempting to hold his horse, which was frightened by the loud noise and smoke arising from the machinery of an electric car of plaintiff in error, which noise and smoke were shown not to be incident to the ordinary operation of such cars, and were not shown by the plaintiff in error to have been without its negligence.

2. INSTRUCTIONS—*Opinion on Weight of Evidence.*—In the absence of any evidence from which a jury might find the existence of a fact, it is not error for the trial judge to express the opinion that there was no evidence of such fact.

3. NEGLIGENCE—*Sudden Emergency—Defendant's Fault.*—One may not, by his own negligence or want of proper care, place another in a perilous situation, and, when sued for injuries resulting therefrom, put the burden on the plaintiff of showing that he acted with reasonable care. Persons in great peril are not required to exercise the presence of mind required of prudent men under ordinary circumstances.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered March 8, 1901, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

VOL. C—52

*Henry Taylor, Jr.,* and *George Ainslie,* for the plaintiff in error.

*Wyndham R. Meredith* and *Wise & Watkins,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

G. W. Hudgins brought his action of trespass on the case, against the Richmond Railway & Electric Company, in the Law and Equity Court of the city of Richmond, to recover damages for injuries sustained by him because of the alleged negligence of the defendant, and there was a verdict and judgment in favor of the plaintiff for $2,000, with interest from the date thereof, to which judgment a writ of error was awarded the defendant company by one of the judges of this court. The case is as follows:

Plaintiff in error was a corporation owning and operating an electric railway line in the city of Richmond, and on March 24, 1900, defendant in error was driving in an open spring wagon east on Clay street, near its southern line. Car No. 102 of plaintiff in error was going west on the north side of Clay street, and when he was about a horse and a wagon's length distant from the car, he heard the car make a loud noise, to which neither he nor the horse paid any special attention, but just as the horse got even with the car the car stopped, and an unusual volume of smoke came from under the front of the car right in the horse's face, which caused the horse to take fright, and start to run away. Defendant in error pulled him up, and, in order to keep him off the curbstone, pulled the left rein harder than he did the right, whereupon the horse darted across the street to the left, and the sudden turn of the wagon threw the defendant in error, who was sitting on the right side, out of the wagon, the wheel of which passed over his leg, breaking and crushing it severely. Defendant in error held on to the reins,

and the horse stopped. The car in question was one of two cars used in emergency by plaintiff in error to take the place of cars that might be undergoing repairs. It differed from most of the cars in use, in that it had what is called a Sprague motor, No. 6, one of the older styles of motors; the later types being more economical, and differing from the one in question in that they have a covering over a part of the machinery. What happened to the car on the occasion of this accident is described as the "brush-holder grounding." The brush-holder is a device which is insulated, and through which the current of electricity passes to the motors. When it grounds, the current which propels the car, instead of taking the usual course, is diverted, and goes to the ground. This is accompanied usually by slight noise and some smoke, and the grounding may be due to dust, grease, water, and other things getting on the brush-holder, and destroying the insulation. The only way to keep the machine from such an accident is to wipe it off, and if this is done once a day it is usually sufficient.

In order to explain that the grounding of the brush-holder, as in this instance, is an accident which is liable to happen to the best machinery used in operating street cars, carefully looked after, and is of frequent occurrence, several witnesses were examined on behalf of plaintiff in error.

Witness Trafford, examined as an expert electrician on behalf of plaintiff in error, testified that the grounding of the brush-holder, or the short circuiting of the current of electricity, would be attended with slight noise, and no more smoke would be expected from it than would be produced by one or two puffs from a cigarette, and that the accident would not be likely to happen if the machine is properly looked after, and kept clean of dust, etc. This witness was asked: "If, on the night of the 23d of March, 1900, the machine in question had been properly cleaned, do you think that enough of that dust would have accumulated by 11 o'clock the following day to make it ground?"

and he answered: "Not if the machine was in good operating order."

Mr. Vaughan, the foreman of the shops of the plaintiff in error, was asked if this Sprague motor on car No. 102 had been cleaned of dust and grease prior to the accident of March 24, and his reply was: "Not that I know of. They were cleaned at night—supposed to be cleaned every night." He also states that there was a man by the name of Oglesby, and three or four colored men on duty the night before; that it was Oglesby's duty to see that the machine was cleaned, and that he was still in the employment of the company.

It further appears from the plaintiff in error's evidence that, at the time of this accident, and for a year prior, it had no day inspector of its cars; that the Sprague motor had at that time gone out of general use by the company, and was only used in an emergency to take the place of other cars undergoing repairs, and that the need of constant attention and repair of the Sprague motor was such that a rule was put up at the shops requiring the motorman who was using one of them, on his return from a trip over the line, to report in the shops so that the machine might be looked after and needed repairs made, but it is not shown that this precaution was always taken, and neither Oglesby, whose duty it was to see that the machine in question was properly looked after and cleaned, nor the conductor, nor the motorman of car No. 102, on the occasion of this accident, was examined as a witness, nor was the accident report-book kept by the company, and upon which, according to witness Vaughan's statement, the cause of this accident was set forth, produced, although called for by defendant in error.

Defendant in error, plaintiff below, asked for four instructions to the jury, three of which, "A," "B," and "D," were given. No objection is made to instructions "B" and "D." Instruction "A" is as follows:

"If the jury believe from the evidence that the horse of

plaintiff was frightened by the noise and smoke arising from the machinery of the car of defendant, and that said noise and smoke was not incident to the ordinary operation of their cars, they are instructed that this raises the presumption that such noise and smoke would not have been caused if those who had the providing, maintaining, and care of defendant's machinery had used proper care in regard thereto, and, in the absence of an explanation on the part of the defendant showing due care on its part, they may infer that the defendant was guilty of negligence; and, if they further believe that such negligence caused the accident as set forth in the declaration, and that the plaintiff was free from fault, they must find for the plaintiff."

The objections urged to this instruction are: First, that it erroneously applies to this case the rule of *res ipsa loquitur;* and second, that the instruction is equivocal, in that it is susceptible of the construction that the court was of opinion that there was an absence of an explanation on the part of the defendant (plaintiff in error here), showing due care on its part, whereby the jury were not left free to determine for themselves this question from the evidence.

"As a rule, negligence is not presumed. But there are cases where the maxim '*res ipsa loquitur*' is directly applicable, and from the thing done or omitted negligence or care is presumed." 16 Am. & Eng. Enc. L. 448.

"When the physical facts of an accident themselves create a reasonable probability that it resulted from negligence, the physical facts themselves are evidential, and furnish what the law terms evidence of negligence in conformity with the maxim, '*res ipsa loquitur.*'" *Seybott* v. *R. R. Co.*, 95 N. Y. 562; 2 Jaggard on Torts, 938; Wharton's Neg., sec. 421; Cooley on Torts, 799; Bigelow on Torts, 596; Shear. & Red. on Neg., sec. 59.

In *Snyder* v. *Wheeling Elec. Co.*, 43 W. Va. 661, a number of cases are cited in which the maxim was applied, and in that case a recovery was sustained for an injury caused by the falling

of an electric wire upon the street, the negligence of the defendant consisting in its failure to inspect properly its lines, and in not seeing that they were strong, suitable, and safe, and that the wires and appurtenances were at all times safely secured, etc. In that case, as in this, the defendant attempted to explain how the accident occurred; that it was an accident liable to happen though the electric wires used in operating the street cars be carefully looked after; that the falling of a wire was of frequent occurrence, and that the defendant had used due care to prevent such accidents. The opinion of the court says.

"One man is hurt from the works or property of another, when, from the nature of the case, he would not likely have been hurt without negligence of that other. May he not ask of that other an explanation, or, on his failure to give it, then damages for his injury? Take the case where one, in passing along a street, is hurt by a barrel falling from a door above, or by a brick falling from a wall or scaffold, or by a falling shutter or wall, or the like. The mere occurrences in themselves import negligence. Especially take the cases where things of great danger are used in public highways, where multitudes constantly and lawfully pass, their very nature requiring the highest degree and constancy of care, and one is killed from its being out of place or defective, why may we not logically and fairly assume negligence, unless other plausible explanation appears?"

In *Mulcairns* v. *City of Jonesville*, 67 Wis. 24, the plaintiff's intestate, while excavating the foundation of a cistern, was killed by the wall, erected by the city as a support for the cistern, falling. The defence sought to be made was that the city had used due care in the erection of the wall, and to explain that the falling of the wall was an accident caused by a state of things which the defendant could not foresee and prevent, but the rule *"res ipsa loquitur"* was applied, and the following instructions to the jury given by the trial judge were approved, viz:

"1. In the absence of any explanation of the falling of the wall in question, you have the right to infer and find from the evidence that it fell because of its defective construction."

"2. When the thing is shown to be under the management of the defendant, and the accident is such that in the ordinary course of things would not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the want of care."

These instructions were in substantial conformity to the general rule in such cases, as laid down in the leading case of *Scott* v. *London Dock Co.*, 3 Hurl & C. 596, followed in many decided cases in both England and America, and approved by nearly all of the text writers.

The rule is no longer limited to cases in which the injured party occupied contractual relations to the defendant.

In *Rose* v. *Stephens etc. Trans. Co.*, 11 Fed. Rep. 438, the plaintiff was injured by the explosion of a steam boiler which was being used by the defendant to propel a vessel chartered by the defendant to others, to be used for the transportation of passengers and freight. The opinion of the court says: "If the explosion resulted either from the carelessness of the employees of the defendant in charge of the boiler, or from the negligence of the defendant in sending forth an unsafe and dangerous boiler to be used where human life would be endangered if the boiler should explode, it is conceded that the defendant is liable. It is contended, however, that it was error to instruct the jury that they might infer such negligence from the fact of the explosion; and it is argued that such a presumption only obtains when the defendant is under a contract obligation to the plaintiff, as in the case of a common carrier or bailee. Undoubtedly the presumption has been more frequently applied in cases against carriers of passengers than in any other class, but there is no foundation in authority or in reason for any such limitation of

the rule of evidence. The presumption originates from the nature of the act, not from the nature of the relations between the parties. It is indulged as a legitimate inference whenever the occurrence is such as, in the ordinary course of things, does not take place when proper care is exercised, and is one for which the defendant is responsible."

A presumption of negligence from the simple occurrence of an accident arises where the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it in similar cases, or where it is caused by the mismanagement or misconstruction of a thing over which the defendant has immediate control, or for the management or construction of which he is responsible. *Trans. Co.* v. *Downer*, 11 Wall. 129; *Railroad Co.* v. *Anderson*, 20 Amer. St., 493; *Railway Co.* v. *Locke*, 112 Ind. 404; *Hayes* v. *Railroad Co.*, 111 U. S. 228.

In *Richmond Railway & Elec. Co.* v. *Bowles*, 92 Va. 738, it is said: "Electricity is an agency no less powerful and dangerous than steam, and imposes equal obligations upon those who use it;" and in *Patterson* v. *C. & O. Ry. Co.*, 94 Va. 21, the rule applicable to steam roads is stated thus: "The rule laid down by the authorities cited that the origin of the fire being fixed upon the railroad company, it is presumptively chargeable with negligence, and must assume the burden of proving that it had used the best precautions known of confining sparks or cinders, is a wise and just one. . . . To hold that the plaintiff, in addition to proving that the railroad company is justly chargeable with the origin of the fire, must also affirmatively prove that its machinery was out of order would practically defeat a recovery in most cases."

No good reason is assigned, and none occurs to us, why the rule as laid down in the foregoing authorities is not applicable to the case at bar.

This brings us to the consideration of plaintiff in error's second objection to instruction "A."

Had there been evidence from which the jury might have found that plaintiff in error had made a reasonable explanation of the occurrence resulting in the injuries to defendant in error, there would be much force in the second objection made to instruction "A."

Conceding, therefore, that the instruction may be interpreted as expressing the opinion of the trial judge that there was an absence of an explanation on the part of the plaintiff in error, whether this was error prejudicial to plaintiff in error remains to be answered. If there was, in fact, no evidence in the case from which the jury might have found that a reasonable explanation had been made by plaintiff in error, then, clearly, it was not error for the court so to instruct the jury. A *prima facie* case for recovery had been made by defendant in error upon his uncontradicted proof of such facts and circumstances as warranted the inference that the injuries for which he sued were due to negligence or want of proper care on the part of plaintiff in error, whereby an explanation from plaintiff in error was called for. This explanation could not be considered as reasonable and satisfactory unless it showed that plaintiff in error had discharged its duty.

Instead of making such explanation, the evidence relied on not only fell very far short of its purpose, but lends force to the presumption of negligence on the part of plaintiff arising from the facts shown to have surrounded the occurrence out of which this suit originates. It showed that the grounding of the electric motor is not of frequent occurrence, where the machine is in a reasonably safe condition, and prudently managed; that if the machine on car No. 102 had been properly cleaned, on the night of March 23, 1900, such an accident would not have happened to it by 11 o'clock the following day, provided that the machine was otherwise in good operating order; that usually when a machine, in good operating order, grounds, instead of causing a loud and unusual noise, and the emission of a volume

of smoke sufficient to frighten horses on the street, it would be attended with "slight noise, and no more smoke would be expected from it than would be produced by one or two puffs from a cigarette."

We have very fully set forth the case as it was submitted to the jury, and are of opinion that there was no error in giving instruction "A" prejudicial to plaintiff in error.

Plaintiff in error's instruction "X" was directly in conflict with instruction "A," and for the reasons already given was properly refused.

Plaintiff in error asked for instruction "Z," as follows:

"The court instructs the jury that if they believe from the evidence that, after the plaintiff's horse became frightened by the car, plaintiff pulled him so suddenly to the left as to cause plaintiff to fall from the wagon, and that in so doing plaintiff did not exercise reasonable care, and received the injury complained in this case, in consequence thereof, they must find for the defendant."

The instruction was given with this modification: "In considering the question as to whether or not the plaintiff acted with reasonable care in pulling the reins, they must consider all the circumstances by which he was surrounded at the time, and particularly whether, by the negligence of the defendant, he had been so flurried or excited as to make it reasonable for him to act as he did."

The objections urged to the modification of the instruction are: First, that it called the attention of the jury *particularly* to the question whether the plaintiff was *flurried* or *excited by the negligence of the defendant;* and, second, that *there is no evidence in the case* to which the particular attention of the jury is called.

Whether the defendant in error acted with the want of due care in pulling his horse to the left to keep him off the curbstone or sidewalk was the question which the instruction, as offered,

sought to have the jury determine, and it was clearly proper for them to consider in that connection all the circumstances surrounding him at the time. It is true that defendant in error nowhere says, in so many words, that he was flurried or excited, but he narrated fully the circumstances surrounding him in the perilous condition in which he was placed at the time, and very naturally added, "if any of you all should get in that fix you might tell how I felt."

One may not, by his own negligence, or want of proper care, place another in a perilous situation, and, when sued for injuries resulting therefrom, put the burden on the plaintiff of showing that he acted with reasonable care. Persons in great peril are not required to exercise the presence of mind required of prudent men under ordinary circumstances. *So. W. Imp. Co.* v. *Smith*, 85 Va. 306; Beach Con. Neg. 42.

Defendant in error was shown to have been in a position of peril, the result of plaintiff in error's negligence or want of due care, and while the addendum to instruction "X" uses the words "flurried or excited," it, in effect, only told the jury that in determining the question to which their attention was directed by the instruction as originally offered, they should consider all the facts and circumstances surrounding him at the time. The instructions to the jury, as a whole, presented the legal questions involved clearly and appropriately, and fully preserved all the rights of plaintiff in error.

The judgment complained of is affirmed.

*Affirmed.*