## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

CHESAPEAKE & OHIO RAILWAY CO. v. HARRIS.

March 9, 1905.

Absent, Keith, P., and Cardwell, J.

1. RAILROADS—*Approach to Stations—Lights.*—It is the duty of a railway company, for the protection of passengers carried or to be carried on its trains, to provide and maintain at its stations reasonably safe and adequate ways for approaching and leaving its trains, and, at night, to have them lighted a sufficient time before and after the arrival of each train to enable passengers to avoid danger; and where passengers are invited, expressly or impliedly, to get off a train at a place other than that at which they usually alight, and there is any special danger attending their approach to the station, it is the duty of the company to warn them of such danger, and to aid them in reaching the station in safety, and this is especially true in the night-time.

2. RAILROADS—*Passengers—Alighting on Wrong Side—Ignorance of Locality.*—A passenger is not guilty of negligence in failing to alight from a train on the side next to the platform, where he is without notice or knowledge of the locality or existence of the platform, and it is a dark, rainy night, and the location of the platform is not obvious, and passengers are getting off indiscriminately on both sides of the train. He has a right to assume that the company has rendered the approaches on both sides safe as far as practicable.

3. APPEAL AND ERROR—*Correct Verdict—Review of Instructions.*—This court will not consider objections made to instructions given or refused in the trial court, where, upon the whole case, it appears that no other verdict could have been rightly found under correct instructions.

4. EXCESSSIVE DAMAGES—*Partiality or Prejudice of Jury.*—A verdict will not be set aside as excessive when the amount allowed is not so

great, under all the facts and circumstances of the case, as to indicate that the jury were actuated by partiality of prejudice.

Error to a judgment of the Circuit Court of Fluvanna county, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The amount of the verdict was $9,000. The chief injury to the plaintiff was to his spine, which caused great physical pain, as well as mental depression and despondency, and the attending physician testified "that I think this injury is of such a nature that it is highly probable he will never recover from it." The other evidence sufficiently appears in the opinion of the court.

[*The map on opposite page shows the localities spoken of in the opinion.]

*A. K. & D. H. Leake,* for the plaintiff in error.

*Daniel Harmon* and *Thomas S. Martin,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

About 8:30 o'clock on the evening of April 13, 1903, Julian O. Harris was injured by falling into a culvert, or ditch, while making his way from a passenger train of the Chesapeake & Ohio Railway Company to its station at Bremo, in the county of Fluvanna, and this action was brought to recover damages therefor, on the ground that his injuries were caused by the negligence of the defendant company.

It appears that the plaintiff had, on the morning of that day, gone from Hardware, a station on the defendant's road west of Bremo, to Richmond, on an excursion train. That

Station Grounds
at
Bramo

Scale 20'=1 inch — February 16th/1904

Office —Division Engineer
W.E.Arben
Asst Engineer

* MAP SHOWING THE LOCALITIES SPOKEN OF IN THE OPINION.

evening he, with many other persons, boarded, as they sup-
posed, the excursion train upon which they had gone to Rich-
mond, to return home.  After leaving Richmond, and before
getting to Bremo, they were informed by the conductor that
his train, being the regular accommodation from Richmond to
that point, did not go beyond Bremo, and that they would have
to get off his train there, and wait at the station for the ex-
cursion train, which was following.

When the train upon which they were travelling reached
Bremo, the engine was stopped at the usual place, but the
train being longer than usual, consisting of the engine, a
baggage car and four passenger cars, the rear car and part of
the next car in front of it did not reach the passenger platform,.
which was on the north side of the track.  The passengers were
directed to get off the train so that it could be moved from the
main track to a siding to make way for the excursion train.

The plaintiff, who was in the rear car, states that when the
train stopped for Bremo it was very dark and raining; that
he knew nothing about the place; that he started to get off the
car, and some one said, do not do that, the depot is on the
other side; that he alighted on the depot side, walked a few
steps on the end of the ties, holding to a car that was standing
on the track; that walking on the ties was so rough that he
thought he would get off the ties and on to a path which he
expected to find on the side of the track, and as he did so, or
after making a few steps, he fell into a ditch (which was about
thirteen feet deep) and received the injuries complained of;.
that he saw neither conductor nor brakeman after the train
reached Bremo; that no one directed or showed him which way
to go; and that there was no light by which to be guided.

It is not denied that the night was dark, and that there was.
a heavy rain falling when the train reached Bremo.  The
statement of the plaintiff that the approaches to the depot and

platform, where he got off, were without lights, and that no
one rendered aid or assistance to persons getting off the rear
of the train, is not only sustained by witnesses of the plaintiff,
but also by the defendant's witness, Thomas, who was with the
plaintiff when he left the train, and near him when he was
injured, and who states that when they got off the train there
was no light to guide the passengers to the depot, nor was
there any care taken by the trainmen to secure their safety,
and that it was so dark they could not tell which way to go.
The ditch into which the plaintiff fell was south of the depot
siding, and not more than 15 or 18 feet from the passenger
train.

The conductor of the passenger train states that he and his
brakeman—he had only one—were on the passenger platform
with their lanterns, assisting passengers to alight, and direct-
ing them to the depot on the opposite side of the train from
the platform, and that his baggage-master, with his lantern,
was on the depot side of train, aiding passengers in getting
off on that side, and directing them to the depot; that the
destination of many of the passengers was Bremo, and that
they did not want to go to the depot; that there were lights
in the depot and in the train, and the signal lights were burn-
ing; and these statements of the conductor are sustained by
the brakeman and the baggage-master. No witness of the
defendant testifies that there was sufficient light where the
plaintiff left the train to guide him in his efforts to reach the
depot, nor do they testify to such a state of facts as show that
this was true. Conceding that the trainmen were where they
state, aiding the passengers in getting off the train, and direct-
ing them where to go, their lanterns would furnish little, if
any, light except to those in their immediate vicinity.

The crowd was very large, the night dark, and it was raining
hard. Two lanterns on one side of the train and one on the

other, and that not there until after the baggage-master had put off the baggage for the station. The lights in the depot, from their character and location, could furnish little, if any, assistance to passengers on the rear part of the train, except to show the direction in which the depot was, and would not do that if the map put in evidence by the defendant is correct, as it shows that the two freight cars on the siding and hereafter to be mentioned, were directly in the line of vision between the rear car and the depot.

The duties which a railway carrier of passengers owe to passengers going to and from its trains to the passenger station were considered by this court in the case of *C. & O. Ry. Co.* v. *Smith, ante* p. 326, 49 S. E. 487, handed down at the last term of the court. It was said in the opinion of the court in that case that "it is the duty of a railway company, for the protection of passengers carried or to be carried on its trains, to provide and maintain at its stations reasonably safe and adequate ways for approaching and leaving its trains, and at night to have such ways reasonably lighted a sufficient time before and after the arrival and departure of each train to enable passengers to avoid danger. . . . And where passengers are invited expressly or impliedly to get off a train at a place other than that at which they usually alight, and there is any special danger attending their approach to the station, it is the duty of the railway company to warn them of such danger, and to aid them in reaching the station in safety, and especially is this true in the night time."

Applying this rule to the facts and circumstances of this case, it is clear that the defendant did not exercise that degree of care for the protection of the plaintiff in going from its train to the station which the law imposed.

But it is insisted that the plaintiff was guilty of contributory negligence. One of the grounds relied on to show this is that, the defendant having provided a suitable and convenient plat-

form for the purpose, it was the duty of the passenger to use it in order to escape the imputation of negligence.

That proposition of law is no doubt correct within certain limits. But the authorities relied on to sustain it show that it is based upon the fact that the passenger has knowledge of the existence of the platform, or its existence is so obvious that he must be held to have notice of it. Shear. & Red. on Neg. (521), in the same sentence quoted from by the defendant, say that "passengers by rail should enter and leave cars by such methods as are, *to their knowledge*, provided for that purpose. . . . It is therefore generally, though not invariably, negligence for a passenger by rail to enter or leave on the opposite side from a landing platform. . . . But if the proper side or method of entry is not obvious, and the passenger is not proved to have had sufficient notice otherwise, he cannot be held in fault for selecting any method which is consistent with ordinary care."

The rule, as limited by the learned authors, can have no application to a case like this, where the passenger was not only without any knowledge whatever of the existence of the platform, but where the passengers on the train were getting off indiscriminately on both sides of the train with the knowledge and assistance of the trainmen. The statement of the defendant's witness, Thomas, if true, that he and the plaintiff first left the car on the platform side, and after wandering around in the darkness and rain got back on the car and alighted from it on the other side, does not affect the question, for neither of them knew at that time or before the accident that there was a platform

Upon his cross-examination the plaintiff stated that one reason why he did not get off on the other side of the train was "because there was such a rush, and that he never follows a crowd in such a rush as that." This, it is insisted, was evidence of contributory negligence.

Taken in the connection in which it was spoken, it does not show any want of due care on his part. He had just been told by some one that the depot was on the other side of the train; he had been directed to get off the train and go to the depot; people were getting off on both sides, and he had no reason to believe that the way to the depot from that side was any less safe than from the other. Ignorant as he was of his surroundings, he had the right to presume that the defendant company had discharged its duty in rendering both approaches safe as far as practicable. Bishop's Non-Contract Law, sec. 1086; *Bressell, &c. v. N. Y., &c. R. Co.,* 84 N. Y. 241.

It is further contended that, "although the plaintiff says that when he got off the train he started towards the depot, his own evidence shows that he must have started in an opposite direction, because he says that after he 'let loose the passenger train' he touched the freight cars, showing that the freight cars were confronting him as he alighted. Had he turned up towards the depot, he could never have reached the trestle and ditch, which could only have been reached by him by turning down the track away from the depot, and then going around the cars and starting towards the depot, as detailed by witness, Thomas. This action was nothing short of negligence."

This contention is based upon a mistake of fact. The front end of the rear car where the plaintiff alighted, as appears not only from the map filed by the defendant, but from the measurements made, and the defendant's evidence as to the point where the train stopped, was several feet east of the east end of the freight cars standing on the depot siding over the culvert, and opposite the ditch into which the plaintiff fell. All four of the passenger cars and a small part of the baggage car were east of the depot. The aggregate length of the passenger cars was 229 2-3 feet. The distance from the depot to the ditch was 104 feet. Thus showing clearly that the front end

of the rear car, which was 52 5-6 feet long, was more than 70 feet east of the ditch, and several feet east of the end of the freight car, whose west end was opposite the ditch, as shown by the map. The plaintiff, having gotten off the train east of the freight car, could never have reached it except by going toward the depot. He states that when he got off his car, somebody told him the depot was up the track; that he started in that direction; that after he let loose the passenger train he touched the freight car, and holding on to it walked upon the ties until, finding that they were so rough, he thought he would get off and walk upon a path which he expected to find on the side of the track, and that when he stepped off, or after making a few steps, he went down into the ditch.

It is evident from the physical facts in the case, as well as from the plaintiff's evidence, that when he got off the train he did not go from the depot, but towards it.

The contention is made that "the plaintiff was also negligent in attempting to cross the trestle, a feat so difficult that it had to be accomplished by his holding on to a freight car in order to get along. He says 'I held on to the train (*i. e.,* the freight cars) as long as I could, and when I had to step off the side of the track I went down into the ditch,' and again he stated that he walked on those ties, and held on to the freight cars, and that he stepped off, thinking he would get in a path, and that when he released his hold on the freight cars he fell into the ditch. He knew, therefore, that he was in a dangerous and precarious situation, and the authorities cited above are sufficient to show that he should not have undertaken to cross the trestle, when there was a safe way which he could have discovered by the exercise of due care on his part."

When the plaintiff's evidence is read as a whole, it does not show that the plaintiff, when walking on the end of the ties and holding on to the freight car, knew, or had the least reason

to believe, that he was on a trestle, or that he was in a danger-ous and precarious situation, and his conduct in letting go the car and stepping off the ties to get into a path, as he supposed, when or just before he fell into the ditch, shows how entirely ignorant he was of his danger. There is not only nothing in the case to show that he knew, or had any reason to believe, that in walking on the end of the ties by the freight car he was in peril, but he had the right to presume, as before stated, that the defendant had discharged its duty in making the ap-proaches from its passenger cars to its station reasonably safe. Bishop's Non-Contract Law, sec. 1086, *Bressell* v. *N. Y., &c. R. Co., supra.*

We are of opinion that the record does not show that the plaintiff was guilty of contributory negligence, and that upon the whole case no verdict other than one against the defendant company could have been rightly found. It is, therefore, un-necessary to consider the objections made to the instructions given and refused in the case, since a decision of those questions could not affect the result. *Southern Ry. Co.* v. *Oliver*, 102 Va. 710, 47 S. E. 862; *Richmond P. & P. Co.* v. *Allen, ante* p. 532, 49 S. E. 656, and cases cited.

The remaining assignment of error is that the damages al-lowed by the jury are excessive.

They do seem pretty heavy, but are not so great, under all the facts and circumstances of the case, as to furnish ground for believing that the jury were actuated by partiality or prejudice; and unless this is so, under the well settled rule in this State in this class of cases, the court should not disturb the verdict. *Farish* v. *Reigle*, 11 Gratt. 697; *Richmond Ry., &c. Co.* v. *Garthright*, 92 Va. 627, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. 839; *Southern Ry. Co.* v. *Oliver, supra.*

We are of opinion, therefore, to affirm the judgment.

*Affirmed.*