## Richmond.

## McCROREY v. THOMAS.

### March 11, 1909.

Absent, Keith, P., and Cardwell, J.

1. APPEAL AND ERROR—*Objections to Evidence—Changing Objection—Harmless Error.*—A party will not be permitted to make one objection to evidence in the trial court and another in the appellate court, nor will a case be reversed for the admission of evidence that could not have prejudiced the objector.

2. INSTRUCTIONS—*Safe Methods—Selections of Safer—Case at Bar.*—The instructions in the case at bar do not impose upon the defendant the duty of using the safer of two reasonably safe ways of managing an appliance, but of using a safe instead of an unsafe method under existing conditions.

3. INSTRUCTIONS—*Not Prejudicial—Case at Bar.*—Where the only difference between an instruction given and an amendment proposed by the defendant consists in the fact that, in the instruction given the duty was imposed upon the defendant of raising an awning if the wind was "dangerously high," and in the amendment the same duty was imposed if the wind was "high," the instruction given was not prejudicial to the defendant, and he cannot complain of it.

4. SAFE PREMISES—*Fall of Awning Over City Street—Liability of Owner—Independent Contractor.*—An owner of property who erects an awning over a city sidewalk is bound to exercise ordinary care to see that it is so secured and managed as to be able to withstand not only the ordinary vicissitudes of the weather, but the force of winds which experience has shown to be liable to occur in that locality. The fact that it was erected by an independent contractor is immaterial if it had been delivered to, and accepted by the owner.

5. INDEPENDENT CONTRACTORS—*Liability to Third Persons.*—Except under peculiar circumstances, an independent contractor is not

liable for an injury to the person or property of one not a party to the contract, occurring after the independent contractor has completed the work and turned it over to the owner or employer, and the same has been accepted by him, though the injury resulted from the contractor's failure to properly perform his contract.

6. NEGLIGENCE—*Presumption—Fall of Awning in City Street.*—Negligence is never presumed from the mere fact of injury, but an injury may occur under such circumstances as will warrant an inference or presumption of negligence. If a pedestrian travelling along a city sidewalk is injured by the fall of an awning attached to a building (and no issue is raised as to the awning being a nuisance) there is a presumption of negligence on the part of the owner or occupier of the house, and the burden is upon him to disprove the existence of negligence by evidence that, as a matter of fact, all proper and reasonable care had been taken.

7. APPEAL AND ERROR—*Excessive Verdict.*—A verdict will not be set aside as excessive in an action to recover damages for personal injuries when it is not so large as to indicate that the jury was actuated by partiality or prejudice.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff for $5,000. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Marshall R. Peterson* and *Thos. H. Willcox,* for the plaintiff in error.

*Starke, Venable & Starke,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

There was a verdict and judgment in the trial court in favor of Beatrice Thomas, an infant, who sued by her next friend, against J. G. McCrorey, for damages for injuries caused by the

fall of an awning.   To that judgment this writ of error was awarded.

It appears that on a windy day in January, 1907, the plaintiff, who was twelve years old, was walking along the sidewalk on Main street in the city of Norfolk, when an adjustable awning in front of and attached to the defendant's store, fell upon her, producing among other injuries a depressed fracture of the skull.

There was some question at the trial as to whether or not an operation would have relieved or prevented some of the injurious consequences which it was testified had or might probably result from the fracture.

Dr. McCormick, one of the plaintiff's witnesses, was asked the following questions, as appears from bill of exceptions No. 1:

"Q. Is there danger attending these operations? A. I think so.

"Q. Now, doctor, if the operation goes through and the child lives after the operation, can you say with any degree of certainty, that either or both of the conditions which will reasonably exist will be cured?   A. I have not had wide experience or observation on the subject, but I have seen a man with a depressed fracture of the skull, who suffered from Jacksonian epilepsy and from epileptic symptoms.   The depression was removed and he ceased having epileptic attacks, but the paralysis remained the same.

"Q. That has come under your observation?   A. Yes, sir.

"Q. How was that injury occasioned?   A. By a blow on the head.

"Q. How?   A. Struck with a piece of iron rod over the center.

"To which last question the defendant, by counsel, objected; which objection the court overruled."   The admission of this evidence is assigned as error.

The objection made to it here is that while the witness might

give his opinion as to what generally might be expected to follow from such a blow, he had no right to give the results in an isolated case which came under the witness' observation.

Conceding that this is true, no such objection was made. The only thing objected to, so far as the bill of exceptions shows, was how the blow in the particular instance testified to was caused. The answer to that question could not have prejudiced the defendant.

Another error assigned is the action of the court in permitting Dr. Graves, another witness for the plaintiff, to answer the following question: "Doctor, from an examination and knowledge of the facts concerning the injury to this particular child, will you state to the jury how, in your opinion, her future will be affected by this injury with reasonable certainty."

The bill of exception No. 2, upon which this assignment of error is based, does not show what the objection to the question was, but when the bill of exception containing all the evidence of Dr. Graves is examined, it appears that the objection made to the question was, that it ought to be confined "to the facts within his (the witness') knowledge and not what the girl has told him." Upon the statement of the plaintiff's counsel, in reply to that objection, that the question related to what the witness knew, the court overruled the objection and permitted the question to be answered.

If there was the further objection to the question, that it was too broad and authorized the witness to enter into the realm of speculation as to the effects of the blow upon the future life of the plaintiff, as is now claimed in the petition, that objection ought to have been made at that time. A party will not be permitted to make one objection to evidence in the trial court and another in the appellate court. *Warren* v. *Warren,* 93 Va. 73, 74-76, 24 S. E. 913.

The action of the court in giving instruction No. 1, offered by the plaintiff, and in refusing to give that instruction as

amended by the defendant in lieu of it, is assigned as error.

Three objections are made to the instruction given, viz.:

"(1) It imposed upon the defendant an absolute duty to use the safer of two ways, either of which, as a matter of fact, may have been reasonably safe in the judgment of a man of ordinary care and prudence situated under the same or similar circumstances.

"(2) It charged that as a matter of law it was culpable negligence in the petitioner, in the choice between alternatives, either of which may have been safe in the judgment of a man of ordinary prudence under the circumstances, not to have used the safer way, and thus took from the jury the very question which, under the settled principles of the common law, is peculiarly and necessarily referred to the determination of the jury, that is to say: Whether the conduct of the defendant was conformable with the requirements of ordinary care and prudence under the circumstances of the case.

"(3) It assumed the existence of a material fact."

The first and second of these objections to the instruction are based upon a misconception of its meaning. It does not raise the question of the defendant's duty to use the safer of two safe ways in the management of the awning, but it told the jury that if the use of the sidewalk was made dangerous to the plaintiff and others under the conditions that existed the day of the accident by the awning being left in a lowered condition, and that it would have been safe if the awning had been raised, then it was the defendant's duty to adopt the safe method; and that if he knew, or in the exercise of ordinary care could have known, that such a wind was blowing and beating upon the awning as to make it dangerous when down, then he was guilty of negligence.

The other objection to the instruction is that it assumes a material fact, viz.: that the wind at the time of the accident was "dangerously high." The only substantial difference upon this point between the instruction which was given and that which

the defendant sought to have the court give in lieu of it is that in the one the wind is described as "a dangerously high wind," and in the other as "a high wind."

It was not assumed in the instruction as given, nor in the instruction as amended and rejected, that the wind was of the character described in either; but in the one the court told the jury that if the wind was "dangerously high" then it was the duty of the defendant to raise the awning, if he knew or could by the exercise of ordinary care have known that such a wind was blowing. In the other, the court was asked to tell them that if the wind was "high" then it was the defendant's duty to raise the awning if he knew or could by the exercise of ordinary care have known that such a wind was blowing. In that given, the duties which the defendant owed to the plaintiff were made to depend upon the question of whether or not the wind was "dangerously high," and in the other merely upon the question of whether or not the wind was "high." There was, under the facts of the case, really no difference between the two instructions as to the character of the wind necessary to make it the duty of the defendant to raise the awning for the safety of the plaintiff and others traveling on the sidewalk; but, if there was any difference, a higher wind was required in order to make it the duty of the defendant to raise the awning in the instruction given than was required in the instruction refused, and, therefore, the one given was more favorable upon this question to the defendant than the one refused. We see no error in the instruction given to the prejudice of the defendant upon either of the grounds of objection made to it.

The court was requested and refused to give the following instruction: "The court instructs the jury, that if they believe from the evidence that the defendant contracted with Hogshire for a stipulated sum to erect the awning referred to in the declaration, that Hogshire was a competent man, that he exercised exclusive control in the selection and discharge of employees in the performance of said work and in payment of wages due

therefor; that the defendant exercised no authority or control over said workmen; that the awning was erected by Hogshire and accepted by the defendant in apparently good condition, then they must find for the defendant, unless they shall further believe from the evidence that some defect existed in the awning at the time of its acceptance, or subsequently developed therein, which should have been discovered by the defendant in the exercise of ordinary care or unless they shall further believe from the evidence that said awning was negligently used and managed."

In the erection and maintenance of the awning over the sidewalk, the defendant was bound to exercise ordinary care to see that it was so secured and managed as to be able to withstand not only the ordinary vicissitudes of the weather, but the force of winds which experience had shown to be liable to occur in that locality.   Whether it was erected under the supervision of the defendant or by an independent contractor would seem to be wholly immaterial, unless the injury complained of was caused before the independent contractor had completed the work and turned it over to the defendant.   For it is well settled that, except under peculiar circumstances which do not exist in this case, the independent contractor is not liable for an injury to person or to property of one not a party to the contract, occurring after the independent contractor has completed the work and turned it over to the owner or employer, and the same has been accepted by him, though the injury resulted from the contractor's failure to properly perform his contract.   See *Winterbottom* v. *Wright,* 10 M. & W. 109 ; *Young* v. *Smith &* *Kelly,* 124 Ga. 475, 52 S. E. 765, 110 Am. St. Rep. 186, 4 Am. & Eng. Ann. Cases 226, and note 228 ; 1 Thomp. on Neg. sec. 686 ; Wharton on Neg. sec. 439.

The awning had been erected by the independent contractor and turned over by him to the defendant and accepted by him a year or more before the plaintiff was injured; yet, by the instruction in question, the court was asked to tell the jury, in

substance, that the defendant was not liable for the plaintiff's injury if the awning was erected by a competent, independent contractor and turned over to the defendant in apparently good condition, unless it further appeared that some defect existed in the awning at that time or subsequently developed therein which should have been discovered by the defendant in the exercise of ordinary care, or that the awning was negligently used or managed. In the event the jury had believed that the awning had been erected by a competent independent contractor and accepted by the defendant from him in an apparently good condition, the instruction would have required the plaintiff, in order to recover, to prove that some defect existed in the awning at the time of the defendant's acceptance, or subsequently developed therein, which should have been discovered in the exercise of ordinary care, or that the awning was negligently used or managed. To have placed this burden upon the plaintiff in a case like this would have been clearly erroneous.

While negligence is never presumed from the mere fact of injury, yet an injury may occur under such circumstances as will warrant an inference or presumption of negligence. This is so where the defendant owes to the plaintiff a duty to use care and the thing causing the injury is shown to be under the management of the defendant or his employees, and the accident is such that in the ordinary course of things it does not occur if those who have the control or management use proper care. It is well settled that where a pedestrian traveling along a highway is injured by the fall of an awning attached to a building (and no issue is raised as to the awning being a nuisance), the liability of the owner or occupier of the house is to be determined upon the principle of negligence in accordance with the phrase or maxim, *res ipsa loquitur;* or, in other words, an injury under such circumstances is held to warrant the presumption of negligence, which puts the burden upon the defendant to disprove the existence of negligence by evidence that as a matter of fact all proper and reasonable care had been

employed.   See Watson's Article on Negligence, 21 Am. & Eng. Enc. L. (2nd ed.), 512-515; 29 Cyc. 589-594; *Walton* v. *Ross,* 100 Minn. 7, 110 N. W. 252, 12 L. R. A. (N. S.) 721, 117 Am. St. Rep. 661, 10 Am. & Eng. Ann. cases, 715, and note, 718-19, and cases cited; *Richmond Ry. &c.* v. *Hudgins,* 100 Va. 409, 41 S. E. 736; *Hogan* v. *Manhattan Ry. Co.,* 149 N. Y. 23, 43 N. E. 403; *Khron* v. *Brock,* 144 Mass. 516, 11 N. E. 748; *St. Louis, &c. Ry. Co.* v. *Hopkins,* 54 Ark. 290, 15 S. W. 610, 12 L. R. A. 189, and note.

The instruction was not a correct statement of the law and the court properly refused to give it.

From what has been said in reference to that instruction, it follows that there was no error in the court's action amending instruction "D," asked for by the defendant, imposing upon him the burden of proving that the awning was erected and maintained with ordinary and reasonable care, unless this appeared from the testimony of the plaintiff or from all the facts and circumstances of the case.

If the discussion in the petition as to the verdict can be considered as a sufficient assignment of error to the action of the court in refusing to set aside the verdict, it is only necessary to say, that this court is of opinion that the instructions submitted the case to the jury as favorably to the defendant as he was entitled to have it submitted, and that the verdict is sustained by the evidence.

The amount of damages allowed is not so large as to indicate that the jury was actuated by partiality or prejudice in assessing them, without which, under a long settled practice, the verdict in cases of this character cannot be set aside on the ground that it is excessive.   *Norfolk, &c. Co.* v. *Spratley,* 103 Va. 379, 49 S. E. 502; *C. & O. Ry. Co.* v. *Harris,* 103 Va. 643, 49 S. E. 997, and cases cited.

The judgment complained of must be affirmed.

*Affirmed.*