## Wytheville.

## KING AND OTHERS V. HARTUNG.

June 13, 1918.

Absent, Burks, J.

1. LANDLORD AND TENANT—*Streets and Highways—Abutting Own-ers—Injury to Person in Street.*—Where a boy was rightfully in a street and was injured by the fall of a large gate, the fall-ing of the gate being caused by negligent construction under the supervision of the landowners, the landowners are liable, and the fact that the premises were in the exclusive possession of a tenant was immaterial, the owners themselves having created the danger. The case is different if the tenant himself, without the authority or knowledge of the owner, creates a dangerous condition.

2. LANDLORD AND TENANT—*Streets and Highways—Abutting Own-ers—Injury to Person in Street.*—A property owner is bound at his peril to see that his premises are safe as to persons using the street upon which the premises abut.

3. LANDLORD AND TENANT—*Streets and Highways—Abutting Own-ers—Injury to Person in Street—Nuisances.*—Things project-ing over a walk, or so situated with reference thereto that if they fall they may do injury to travelers, are nuisances unless so secured as to be absolutely safe, and the person maintain-ing them is liable for all injuries arising therefrom, except such as are attributable to inevitable accident.

4. INDEPENDENT CONTRACTORS—*Owner Exercising a General Super-vision Over Work.*—Where a landowner, who has employed a competent workman to erect a gate, is present exercising a general supervision over the work, the employee is not an inde-pendent contractor.

5. INDEPENDENT CONTRACTORS—*Liability of Abutting Owner.*—Where a boy rightfully in a street is injured by a gate which opened out into the street falling upon him, the owner of the premises upon which the gate is situated is liable for injuries to the boy, although the gate was erected by an independent con-tractor and its fall was due to negligence in construction.

24

6.  STREETS AND HIGHWAYS—*Abutting Owners—Awnings—Other Parts of Building.*—In actions for injuries to passengers in streets, there is no reason for a distinction between the case of an awning projecting over a street and the case of any other part of a building, which, though not projecting over the street, is liable· to fall upon it.

Error to a judgment of the Circuit Court of city of Portsmouth, in an action of trespass on the case. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Frank L. Crocker,* for the plaintiffs in error.

*D. T. I'Anson* and *J. W. Happer,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

A heavy wagon gate, opening into Duke street, in the city of Portsmouth, fell on Oscie Hartung, a boy five years of age, producing injuries for which he brought this action against James E. King and others, owners of the premises to which the gate was attached. There was a verdict and judgment below in his favor, and the defendants bring the case here for review:

The evidence which went to the jury showed, or tended materially to show, the following pertinent facts: T. B. Hartung, the plaintiff's father, was, at the time of the injuries complained of, and had been for some years prior thereto, occupying as a residence a house and lot situated at the corner of Duke street and Maple avenue, under a lease from the defendants. A large gate, affording an entrance to a wagon way from the yard to Duke street, was attached by hinges to the corner of a stable and opened out into the street. It was so adjusted that when opened it

would swing back until it rested against the outer side of the stable, and was held there by its own weight. An old gate at the same place had worn out, and the one which fell on the boy was practically new, built and hung a few weeks prior to the accident. The contract of lease contained no agreement for repairs, and the defendants voluntarily agreed to renew the gate. To do this they employed an experienced and competent workman; but Mr. James E. King, one of the defendants, acting for himself and the others, was present during the greater part of the time while the work was in progress, and gave general directions in regard thereto. The post to which the gate was attached at the corner of the stable was partially decayed. Before it was renewed, Mrs. Hartung, the wife of the tenant and mother of the boy, told Mr. King that it would be "perfectly useless to put up that gate unless he put up a new post." After the work was completed, Mr. King inspected and accepted it. To all outside appearances the work seemed to have been well and properly done, but either because the nails were too small, or because of the defective condition of the post, or as a result of these conditions combined, the gate was not sufficiently supported. As one of the witnesses for the plaintiff said, nails of the kind used "would not or could not have held the gate securely."

On the morning of the accident, T. B. Hartung, who was a drayman, went out very early to his work, driving through the gate and leaving it open and resting against the side of the stable. Later on in the day, the boy, who was at the time driving a chicken out of the yard, ran out into the street opposite the gate, which just at that moment fell upon him, causing the injury for which this action was brought. An examination showed that the gate had pulled loose from the post.

There was a sharp conflict in the evidence as to the condition of the corner post and the sufficiency of the gate fast-

ening, but this conflict must, under familiar rules, be resolved in favor of the verdict. There was also evidence on the part of the defendants tending to show that the gate had been struck at some time prior to the accident by the hub of a wagon wheel, which might have tended to render it insecure. This question also, however, was decided by the jury adversely to the defendants upon instructions which expressly told them to find for the latter if the gate fell from any cause over which the defendants had no control. There was abundant evidence upon which the jury might have found that the gate fell because of the negligent use of insufficient nails and timber for its support; and we shall presently see that the instructions as a whole were more favorable to the defendants than was warranted by the law.

The declaration rests solely upon the theory that the plaintiff occupied the relationship, not of a tenant or member of a tenant's family, but of a stranger to the owners of the property, and the right to a recovery is based upon an alleged breach of the duty of the defendants to keep their premises abutting on the street in such condition as not to result in injury to travelers. The relationship of landlord and tenant is not invoked or involved in the case.

At the time of the accident the boy was not on the premises, but was rightfully in the street, and the fact that the premises were in the exclusive possession of a tenant is immaterial. The owners themselves created the danger. See 13 R. C. L., section 349; *Hill* v. *Norton*, 74 W. Va. 428, 433, 82 S. E. 363, Ann. Cas. 1917 D, 489. The case is different in this respect when the tenant himself, without the authority or knowledge of the owner, creates a dangerous condition. See 16 R. C. L., section 593.

We are unable to differentiate this case in principle from the cases of *McCrorey* v. *Thomas*, 109 Va. 373, 63 S. E. 1011, 17 Ann. Cas. 373, and *McCrorey* v. *Garrett*, 109 Va. 645,

64 S. E. 978, 24 L. R. A. (N. S.) 139, although the defendant in each of the latter was a lessee, who, instead of the landlord, had created the danger. It is true that both of the cases cited involve injuries resulting from awnings projecting over the street, while in the instant case the evidence does not clearly show that the gate, when entirely closed, or when open all the way back, projected to any extent over the street line. It did, however, open out over the street, and was so situated that, if it fell, either from a closed or an open position, it would fall upon the street. There can be, as we think, no rational distinction between a danger to the public from an awning which, so long as it remains in place, is absolutely harmless, even though it does project over the sidewalk, and such a danger from a gate, which, so long as it remains in place, is absolutely harmless, even though it does not project over the sidewalk; provided, in either case, if the object falls, it must fall on the street.

There is considerable confusion and conflict in the authorities as to whether abutting property owners are insurers of the safety of travelers against the dangerous condition of their premises.

The rule is thus stated in 1 Thompson on Negligence, section 1199: "The owner of property abutting on a highway is under a positive duty to keep it from being a source of danger to the public by reason of any defect in structure, repair, use or management which reasonable care can guard against. Reasonable care must be exercised by such owners to keep their buildings safe, to the end that they do not fall in whole or in part, or that objects do not fall over them, injuring passersby on the sidewalk or street; but such an owner is not a guarantor or an insurer of the absolute safety of the sidewalk, and proof of negligence on his part is necessary to charge him with liability for an injury received thereon."

The case of *McCrorey* v. *Thomas, supra,* seems to have been tried under the rule as laid down above, namely, that the owner or occupier of property abutting on a street is not an insurer, and that his liability is to be tested by the ordinary rules applicable in negligence cases. In the instant case, although the declaration proceeds upon the theory that there was an absolute duty upon the part of the defendants to keep the premises safe as to travelers on the street, it appears from the course of the evidence and from the instructions to the jury that the case was tried upon the theory that they were not insurers and were only liable for negligence. Having already seen that there is no reason for a distinction between the case of an awning projecting over the street and the case of any other part of a building which, though not projecting over the street, is liable to fall upon it, the case of *McCrorey* v. *Thomas* becomes here absolutely controlling. The plaintiff's evidence, as shown, fully warranted the jury in finding that the gate had been negligently constructed. The only defense, therefore, which could possibly be made in this court against the correctness of the verdict, under the evidence and instructions, is that the defendants were not liable because they selected a competent contractor to do the work, and cannot be held liable for the consequences of his negligence. The evidence does not satisfactorily establish the contention that the gate was erected by an independent contractor because one of the defendants, acting for himself and the others, seems to have been present exercising a general supervision over the work; but assuming that the work was done by an independent contractor, that defense is not available in this case. In *McCrorey* v. *Thomas,* Judge Buchanan said (italics added):

"The awning had been erected by the independent contractor *and turned over by him to the defendant and accepted by him* a year or more before the plaintiff was in-

KING v. HARTUNG, 123 VA. 185.        191

jured; yet, by the instruction in question, the court was asked to tell the jury, in substance, that the defendant was not liable for the plaintiff's injury if the awning was erected by a competent, independent contractor and turned over to the defendant in apparently good condition, unless it further appeared that some defect existed in the awning at that time or subsequently developed therein which should have been discovered by the defendant in the exercise of ordinary care, or that the awning was negligently used or managed. In the event the jury had believed that the awning had been erected by a competent, independent contractor and accepted by the defendant from him in an apparently good condition, the instruction would have required the plaintiff, in order to recover, to prove that some defect existed in the awning at the time of the defendant's acceptance, or subsequently developed therein, which should have been discovered in the exercise of ordinary care, or that the awning was negligently used or managed. To have placed this burden upon the plaintiff in a case like this would have been clearly erroneous." See also Gorham v. Gross, 125 Mass. 232, 28 Am. Rep. 224.

The subsequent case of McCrorey v. Garrett, supra, goes a step further than the Thomas Case and holds that in this class of cases, the test of liability is not the lack of proper care on the part of the owner or occupier of the building, "but the fact of resulting injury, through no fault of his, to the party using the street." In that case Judge Harrison quotes with approval the following extract from Wood on Nuisances: "It would seem that all sign boards, cornices, blinds, awnings and other things projecting over a walk, or so situated with reference thereto that if they fall they may do injury to travelers, are nuisances unless so secured as to be absolutely safe, and the person maintaining them is liable for all injuries arising therefrom, except such as are attributable to inevitable accident." (Italics added.) It

is the clear result of the decision of this court in the *Garrett Case* that a property owner, where the facts are as here, is bound at his peril to see that his premises are safe as to persons using the street upon which the premises abut.

We may add that while this court in the *Garrett Case* held that owners or occupiers of abutting property are insurers of the safety of their premises as to passers-by on the street, and thus went further than in the *Thomas Case,* there is no necessary conflict between the two decisions, because in the *Thomas Case* it was not contended that the defendant was such an insurer, and, inasmuch as the plaintiff in that case recovered upon the theory of negligence and not upon the theory that the awning was a nuisance *per se,* there was no occasion, in affirming the judgment, to declare that the awning was *per se* a nuisance. It is apparent, however, upon reading Judge Buchanan's opinion in the *Thomas Case,* that he had in mind this distinction, which is the subject of much conflict in the authorities; and, with his usual accuracy, he shows that no issue was made in the case as to a nuisance *per se.*

It is manifest, therefore, that in the instant case the defendants were accorded a trial under a rule more favorable than they were entitled to under the decisions in this State.

There was no error in the judgment complained of, and it must be affirmed.

*Affirmed.*